MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. BAKER BROS. et al.
(No. 2082.)

(Court of Civil Appeals of Texas. Texarkana. March 14, 1919. Rehearing Denied March 20, 1919.)

1. ABATEMENT AND REVIVAL ⬤≈82—TIME FOR PLEA IN ABATEMENT — MISJOINDER OF CAUSES.

Where two railway companies filed a joint answer, not complaining of misjoinder of causes of action, and subsequently filed separate answers, pleading misjoinder in abatement, the objection was waived.

2. CARRIERS ⬤≈173—BILLS OF LADING—CONSTRUCTION—THROUGH SHIPMENT.

A bill of lading in which the blanks left for stations named on the railroad company's line were not filled, held a contract for through shipment between points within the state within the meaning of Rev. St. 1911, art. 731, relating to shipment contracts, notwithstanding the bill provided it was not to be treated as a through shipment to a point off company's road.

Error from District Court, Collin County; M. H. Garnett, Judge.

Action by the Collin County National Bank against Baker Bros. and others. Judgment for plaintiff, and the defendants Wichita Valley Railway Company and the Missouri, Kansas & Texas Railway Company of Texas jointly bring error. Affirmed.

Wallace Hughston, of McKinney, for plaintiffs in error.

R. C. Merritt, L. J. Truett, and Jno. Dayles, all of McKinney, for defendants in error.

HODGES, J. During the month of January, 1915, Baker Bros. bought 93 bales of cotton with money furnished by the appellee Collin County National Bank. Forty-three bales of that cotton were shipped from Munday, Tex., to Galveston, on a bill of lading

issued by the Wichita Valley Railway Company via Stamford and over the line of the Missouri, Kansas & Texas Railway Company of Texas. This shipment was consigned to the "order of the Munday Trading Company, of Munday, Texas, notify Baker Bros., Galveston, Texas." Twenty-five bales of cotton were shipped from Knox City, Tex., over the Kansas City, Mexico & Orient Railway Company of Texas and the Missouri, Kansas & Texas Railway Company of Texas on a bill of lading issued by the first-named railway company. The cotton was consigned to the "order of G. W. McCarty, destination Galveston, notify Baker Bros., Galveston, Texas." Twenty-five bales were shipped from the same point to the same destination, consigned to the "order of E. R. Harlan, destination Galveston, notify Baker Bros., Galveston, Texas." All of the bills of lading were indorsed in blank by the consignors and delivered to Baker Bros., who immediately attached them to drafts for the purchase price of the cotton, and sent same to the Collin County National Bank, which paid the drafts, amounting in the aggregate to $3,500. The bank retained possession of the drafts; and on the 3d day of April, 1915, drew its draft for $3,500 on the Cannon Commission Company of Galveston, Tex., with the three bills of lading attached. The Cannon Commission Company refused to pay the drafts, and they were returned to the bank.

This suit was instituted by the Collin County National Bank against Baker Bros. and the three railway companies named, for the conversion of the cotton; the bank claiming a lien to secure the purchase price advanced to Baker Bros. In a trial before the court a judgment was rendered in favor of the bank against Baker Bros., the Wichita Valley Railway Company, and the Missouri, Kansas & Texas Railway Company of Texas. The suit against the Kansas City, Mexico & Orient Railway Company of Texas had been dismissed. The judgment against the Wichita Valley Railway Company was limited to the value of the cotton for which it had issued a bill of lading, and also gave that company a judgment over against the Missouri, Kansas & Texas Railway Company of Texas for whatever sum it might pay in satisfaction thereof.

The court found as a fact that the Wichita Valley Railway Company delivered the 43 bales of cotton received by it to the Missouri, Kansas & Texas Railway Company of Texas at Stamford, Tex.; that the Kansas City, Mexico & Orient Railway Company of Texas delivered the 50 bales of cotton received by it to the Missouri, Kansas & Texas Railway Company of Texas at a junction point on its line; and that the latter company carried all the cotton to Galveston, the place of destination. The cotton was not reloaded into other cars when received by the Missouri, Kansas & Texas Railway Company of Texas, but was carried through in the original cars. No new bills of lading were issued by the Missouri, Kansas & Texas Railway Company of Texas when it received the cotton, but it was transported under the original bills of lading. On March 15, 1915, the Missouri, Kansas & Texas Railway Company of Texas, while the Collin County National Bank held the bills of lading, without requiring their surrender and without the consent of the bank, delivered the cotton to the Cannon Commission Company. The court further found the value of the cotton, and that the Collin County National Bank at the time of its surrender had a lien on it for the sum of $3,500; and judgment was rendered accordingly. The court concluded as a matter of law that the 43 bales of cotton originating on the line of the Wichita Valley Railway Company were shipped on a through bill of lading from the point of origin to destination, and that the Missouri, Kansas & Texas Railway Company of Texas recognized and acquiesced in that bill of lading as a through contract of shipment.

This appeal is prosecuted by the Wichita Valley Railway Company and the Missouri, Kansas & Texas Railway Company of Texas jointly.

[1] The first error assigned complains of the refusal of the court to sustain a plea in abatement filed by these two railway companies, in which they claim a misjoinder of causes of action. They insist that the cause of action, if any, against the Wichita Valley Railway Company for the loss of the 43 bales of cotton was distinct and in no way connected with that resulting from the loss of the 50 bales of cotton shipped over the Kansas City, Mexico & Orient Railway Company of Texas. Conceding that proposition to be correct, the record shows that the above-named railway companies originally filed a joint answer, in which no complaint was made of the misjoinder of causes of action. They subsequently filed separate amended original answers, in which for the first time they presented this matter in abatement. The court concluded (and we think correctly so) that the objection was waived. But even if it had not been waived, it is by no means certain that the plea should have been sustained. Finegan v. Read, 8 Tex. Civ. App. 33, 27 S. W. 261, and cases cited. The Missouri, Kansas & Texas Railway Company of Texas has no right to complain of the judgment upon that ground, and the Wichita Valley Railway Company was amply protected against any liability other than that for which it could have been held responsible in a separate suit.

[2] Plaintiffs in error also insist that the court erred in finding as a fact that the cotton was shipped from the point of origin to destination in the same cars and upon the

same bills of lading, and also erred in concluding as a matter of law that the bill of lading issued by the Wichita Valley Railway Company was for a through shipment. The material portions of that bill of lading are as follows:

"The Wichita Valley Railway Company. Order Bill of Lading—Original and Only. Agent's B. L. No. 200. For use only between points within the state of Texas. January 15th, 1915. Received from Munday Trading Company at Munday, Texas, the following packages, contents and value unknown, in apparent good order, except as noted, marked and numbered as per margin, to be transported from ——— (must be a station on this line) to ——— (must be a station on this line) there to be delivered as indicated below, unless destined beyond, and if destined beyond, then the Wichita Valley Railway Co. agrees, as agent for the shipper, to tender the shipment to connecting common carrier, en route to destination.

"Consigned to order of Munday Trading Co. (mail address—not for purpose of delivery), Munday, Texas. Destination, Galveston, state of Texas, county of ———. Notify Baker Bros. at Galveston, Texas. Car initial ———. Car No. ———. Via Stamford, M., K. & T. Ry. No. packages 43. Description of articles and special marks, bales cotton, marked 'B L Through Flat.' Weight subject to correction, 22051. Class or rate subject to correction, ———. Corrections made in this B/L by W. F. Sterling, G. F. A., per Dorman, 1/27/18. War revenue stamp affixed before signing. A. B. Reese. 27 bales not sufficiently covered on ends—sample bales open.

"It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed by any carrier shall be subject to all the conditions whether printed or written herein contained, and which are agreed to by the shipper and accepted for himself and his assigns.

"Inspection of property covered by this bill of lading will not be permitted unless provided by law, or unless permission is indorsed on the original bill of lading or given in writing by the shipper.

"Conditions.

"Section 1. No carrier or party in possession of any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, riots or strikes, or the act of default of the shipper or owner, or for differences in the weights of grains, seed, or other commodities caused by natural shrinkage or discrepancies in weights, or for any vice or inherent defect in the property shipped.

"Section 2. If shipment is destined to a point off this company's road, it is agreed that this is no contract for through shipment, and this company's liability as a common carrier shall terminate on tender of delivery to a connecting carrier."

The question is, Was this a contract for a through shipment from Munday to Galveston within the meaning of article 731 of the Revised Civil Statutes? In other words, was it a contract under which its connecting carrier, the Missouri, Kansas & Texas Railway Company of Texas, might receive and transport goods without the giving of a new bill of lading? We are of the opinion that it was. That construction was placed upon it by both of the plaintiffs in error. The cotton went through from Munday to Galveston in the same cars. The Wichita Valley Railway Company did not demand a surrender of its bill of lading when the cotton left its line. It is true the bill of lading stipulates that if the cotton be destined to a point off the road of the Wichita Valley Railway Company this was not to be treated as a contract of through shipment. But why insert that clause in a contract for shipment over only one line of railway? If without that clause the bill of lading should be treated as one for a through shipment, that provision should be construed as an attempt to limit the liability of the issuing company in violation of article 731. It is well known that railway companies prepare and have their contracts for bills of lading printed, leaving only the necessary blanks required by the varied shipments received. If the Wichita Valley Railway Company desired to contract for transportation exclusively over its own line, it might have done so by using language that made that purpose plain. There were blanks in this bill of lading left for the names of the stations on the Wichita Valley Railway Company's line, but they were not filled in. The failure to fill them cannot be treated as an accidental omission. That fact and the further fact that the contract contained stipulations expressly for the benefit of connecting carriers justify the construction adopted by the trial court. St. L. S. W. Ry. Co. v. Hughston, 186 S. W. 429; Ft. W. & D. C. Ry. Co. v. Bone, 195 S. W. 244; Patterson & Roberts v. Railway Co., 195 S. W. 1163.

The judgment will be affirmed.