FILED

JUN 08 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | ) BAP Nos. SC-11-1052-PaMkCa |
| | ) |
| EUGENE DUGGER, JR.; MARIANNE FRANCIS DUGGER, | ) Bankr. No. 05-00024-LA7 |
| | ) |
| | ) Adv. No.   08-90002 |
| Debtors. | ) |
| _____ | ) |
| | ) |
| GREGORY A. AKERS, Chapter 7 Trustee, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| MARY ANN MATTEI; EUGENE DUGGER, SR., | ) |
| | ) |
| Appellees. | ) |
| _____ | ) |

Argued and Submitted on January 19, 2012
at Pasadena, California

Filed - June 8, 2012

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Louise DeCarl Adler, Bankruptcy Judge, Presiding

Appearances:    Nannette Farina argued for appellant Gregory A. Akers; Ajay Gupta argued for appellee Eugene Dugger, Sr.

Before: PAPPAS, MARKELL and CASE,[2] Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value.  See 9th Cir. BAP Rule 8013-1

[2] The Honorable Charles G. Case, II, Bankruptcy Judge for the District of Arizona, sitting by designation.

-1-

Chapter 7[3] trustee Gregory A. Akers ("Trustee") appeals from an order of the bankruptcy court entered in this adversary proceeding granting a summary judgment dismissing Trustee's claims against Mary Ann Mattei ("Mattei"), and an order denying Trustee's motion for a default judgment as to his claims against Eugene Dugger, Sr. ("Senior")[4] and, instead, entering a judgment against Trustee dismissing all claims against Senior. We AFFIRM the bankruptcy court's order granting summary judgment to Mattei. However, we VACATE the judgment in favor of Senior and we REMAND this matter to the bankruptcy court for further proceedings consistent with this decision.

**FACTS**

Eugene Dugger, Jr. ("Junior") and Marianne Francis Dugger (together, "Debtors") filed a petition under chapter 13 on January 4, 2005. David L. Skelton was appointed chapter 13 trustee ("Skelton").

In declarations subsequently submitted to the bankruptcy court in the adversary proceeding giving rise to this appeal, Skelton explains that he acted diligently in performing his duties as chapter 13 trustee. In particular, Skelton states that he

---

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, as enacted and promulgated prior to the effective date (October 17, 2005) of the relevant provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, April 20, 2005, 119 Stat. 23, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] Like the bankruptcy court and parties, in this decision, for clarity, we refer to Mr. Duggar, Sr. as "Senior," and to his son as "Junior." No disrespect is intended.

-2-

carefully reviewed the Debtors' petition, schedules and statement of financial affairs ("SOFA"), and verified their income by reference to tax returns, profit and loss statements, and Debtors' responses in a business questionnaire. Skelton also questioned Debtors at the § 341(a) meeting of creditors, and he attached his notes from that meeting to his declaration. Those notes show that Skelton inquired about Debtors' purchase of any real property within one year of the petition date.

Skelton also expressed in his declaration his opinion that Debtors' counsel had done a "horrible job" in preparing their bankruptcy papers. In his view, the errors and omissions Skelton perceived in these papers were the result of carelessness and incomplete examination of the papers by Debtors' counsel. Nothing in the bankruptcy papers suggested to Skelton that Debtors had made any transfers of real property more than two years before the petition.[5]

Debtors' chapter 13 plan was confirmed by the bankruptcy court on May 25, 2005. After two years, Debtors were unable to make their payments under the plan and, on August 22, 2007, Debtors voluntarily converted the case to chapter 7. Trustee was appointed to serve as chapter 7 trustee.

A § 341(a) meeting of creditors in the chapter 7 case was held on May 24, 2007. During that meeting, a creditor,

_____

[5] On May 6, 2011, the National Association of Chapter 13 Trustees ("NACTT") submitted an amicus curiae letter to the Panel for this appeal. The letter discussed the ordinary business practices of chapter 13 trustees, noting that "Chapter 13 trustees rarely conduct intensive investigations of debtor's prepetition assets or transfers." NACTT Letter at 1. The letter did not address the specific facts of this case. The amicus letter of NACTT is hereby ACCEPTED. See Fed. R. App. P. 29.

Mrs. Greeniaus, and her daughter, Mrs. McKee, informed Trustee that Junior had told them that he owned real property in Seguin, Texas (the "Guadalupe Property") that was not listed in Debtors' bankruptcy schedules. In response, Junior indicated that he had transferred his ownership interest in the Guadalupe property to his father, Senior, "about ten years ago." Trustee continued the meeting to obtain additional information about the property and other assets.

In a declaration submitted later, Deb Brodie, a real estate agent in Texas, stated that she had been contacted by a San Diego real estate agent in approximately Summer 2006. Brodie was informed that a "Pete" Dugger[6] and his wife, Marianne, wanted to sell a 21-acre property in Texas. Ms. Brodie declared that she had several telephone conversations with Junior in which he discussed the terms of sale. It was her understanding that while Senior was the owner of the Guadalupe Property, Junior was making the payments on the Contract for Deed by which the land had been acquired. As it turned out, on October 15, 2007, Senior sold the Guadalupe Property, deeding it to Rodger and Joseph Wein.

At the continued § 341(a) meeting in Debtors' chapter 7 case held on November 20, 2007, Debtors presented what Trustee described as "partial and disorganized paperwork" regarding the Guadalupe Property. The information they supplied included copies of a Contract for Deed executed by Junior and Cynthia[7] Dugger on

---

[6] It is undisputed that Junior also goes by the name "Pete."

[7] Cynthia is Junior's former wife. It appears that Junior married Marianne, his current wife and co-debtor, in 2000.

-4-

July 13, 1994;[8] an assignment of Junior's rights in the contract to Senior dated October 9, 2001; and a deed conveying the Guadalupe Property from Junior to Senior dated October 15, 2007. There is nothing in these documents to show if any of them had been recorded. The paperwork also provided no information concerning whether there were debts owed on the Guadalupe Property at the time of the transfers. Debtors did not inform Trustee that the Guadalupe Property had been sold by Senior during the pendency of Debtors' bankruptcy case.

Trustee ordered a title search on the Guadalupe Property in December 2007. The search ultimately disclosed the October 15, 2007 sale of the Property by Senior. Trustee's investigations also uncovered the existence of another property that had been allegedly owned by Junior, a one-acre tract in Cibolo, Texas (the "Bexar Property"). Apparently, a warranty deed had been issued to Junior for the Bexar property on October 1, 1995. On April 12, 2002, Junior executed a quitclaim deed to the Bexar Property to Senior, for the alleged consideration of $3,000. Then, on July 24, 2003, Senior signed a quitclaim deed conveying the property to Mattei, who is Senior's daughter and Junior's sister. It is undisputed that Mattei paid no consideration for the 2003 transfer, which Senior later described as a "Christmas gift."

Based on what he had learned, on January 2, 2008, Trustee commenced this adversary proceeding against Senior and Mattei; he filed an amended complaint on April 8, 2008. In the amended

[8] The Contract for Deed provided for monthly installment payments of $153.12, until the purchase price of $22,000 (at 8 percent interest) was paid, at which time the seller agreed to issue a deed to the property to the buyer.

complaint, Trustee asserted claims seeking the following relief: (1) First Claim, avoidance of transfer of the Guadalupe Property against Senior pursuant to §§ 544(a) and (b) and 550; (2) Second Claim, for declaratory relief against Senior and GHK Enterprises, LP,[9] finding that GHK holds bare legal title to the Guadalupe Property, and that it is property of the estate within the meaning of § 541(a);[10] (3) Third Claim, to avoid the 2007 post-petition transfer of the Guadalupe Property against Senior under § 549; (4) Fourth Claim, to sell the Guadalupe Property under §363(b) and (h) against Senior; (5) Fifth Claim, to avoid various transfers of the Bexar Property under § 544(b) against Mattei and Senior; and (6) Sixth Claim, to sell the Bexar Property under §363(b) and (h) against Mattei and Senior. Implicitly recognizing that the applicable statute of limitations for avoidance actions may have expired, Trustee alleged in the amended complaint that the doctrine of equitable tolling should be applied in this case to excuse any tardy filing of the action.[11]

---

[9] GHK was the original owner of the Guadalupe Property, and the seller under the Contract for Deed with Junior. GHK is not a party to this appeal.

[10] Within the Second Claim, Trustee asserted that Senior "knowingly receiv[ed] title into his name of the debtor(s)' ownership interest in the Guadalupe County Property and Bexar County Property," and that Mattei knowingly received "title into her name of the debtor(s) ownership interest in the Bexar County Property." This assertion would form the basis for Trustee' later argument that a "resulting trust" arose such that the properties were property of the bankruptcy estate on the petition date.

[11] Debtors were granted a discharge on November 27, 2007. However, as the result of his investigations, Trustee discovered that Debtors had concealed other bankruptcy estate property, including equipment and vehicles, a business bank account, and a Palm Springs timeshare. Trustee commenced another adversary

(continued...)

-6-

On January 16, 2009, Mattei filed a motion for summary judgment concerning the two claims targeting her in Trustee's amended complaint. The foundation for Mattei's summary judgment motion was that, (1) Trustee's claims against her were barred by the § 546(a) statute of limitations; (2) the statute was not equitably tolled; and (3) Trustee was not a successor to any unsecured creditor in existence at the time of commencement of the case, as required for application of § 544(b) and state law.

Trustee opposed the motion for summary judgment on February 17, 2009. He asserted that: (1) Trustee had standing to prosecute the action because there was at least one qualifying creditor with a claim on the date of transfer; (2) under the facts, the § 546(a) statute of limitations should be equitably tolled; and (3) reasonably equivalent value was not given in exchange for the transfers.

The summary judgment hearing took place on March 5, 2009. The bankruptcy court first struck seven of the affidavits submitted by Trustee[12] because they only related to the Guadalupe Property (while only the transfers of the Bexar Property were at issue on Mattei's summary judgment motion) and were irrelevant, or

[11](...continued) proceeding seeking revocation of the Duggers' discharge under §727(d)(1), (2) and (3) on November 25, 2008. On December 24, 2008, Trustee filed a motion for summary judgment. Debtors filed an answer and opposition to the summary judgment motion, generally arguing that the property that they had allegedly concealed was worthless. After a January 29, 2009 hearing, the bankruptcy court granted Trustee's motion, and on February 9, 2009, entered a summary judgment revoking Debtors' discharge under § 727(d)(1). That judgment was not appealed.

[12] Greeniaus, McKee, Brodie, Myers, Wein, Kane, and DeLuca.

-7-

that they merely tended to establish that Junior was a braggart and liar.[13] After hearing the parties' arguments, the bankruptcy court granted summary judgment to Mattei because:

- The § 546(a) statute of limitations for avoidance actions in this case expired on January 4, 2007, and Trustee's complaint was time-barred as a matter of law.

- There was no basis for equitably tolling the limitations statute, in that there was no evidence showing wrongful conduct or fraud by the Debtors, or any other extraordinary circumstances that would justify equitable tolling.

- Trustee had not established he had standing to pursue the § 544(b) claims, since he could not show that there was an existing creditor with some amount owing on the date of transfer.

The bankruptcy court entered an order granting summary judgment on March 11, 2009. Trustee appealed, but this Panel dismissed the appeal as interlocutory. Akers v. Mattei (In re Dugger), Case no. SC-09-1095 (9th Cir. BAP, June 18, 2009).

Trustee then turned his attention to the claims against Senior. After several unsuccessful attempts to obtain responses to written discovery, Trustee filed a motion on October 1, 2009, for an order deeming his requests for admission admitted, to compel interrogatory responses and production of documents, and for attorney's fees ("Motion to Compel"). After a hearing on Trustee' Motion to Compel, the bankruptcy court determined that

---

[13] The bankruptcy court indicated it needed no additional proof concerning Junior's credibility: "THE COURT: The Court doesn't really have to be convinced of that. Mr. Dugger Jr. is a liar and braggart, no question about it." Hr'g Tr. 32:6-9, March 5, 2009.

-8-

Senior's discovery answers were insufficient in fifteen areas and directed him to respond and to provide additional responses and copies of documents no later than November 16, 2009. The court entered an order memorializing these directions on November 18, 2009.

Because he determined that Senior's responses were still inadequate, on January 21, 2010, Trustee filed a motion for terminating sanctions against Senior (the "Terminating Sanctions Motion"). He sought an order striking Senior's answer to the complaint, and entering a default judgment against him for willful and bad faith violation of the bankruptcy court's November 18 order and continued discovery abuses. The hearing on the Terminating Sanctions Motion was held on February 18, 2010. Trustee was represented by counsel and Senior appeared pro se. After hearing from the parties, the court took the motion under submission.

On May 4, 2010, the bankruptcy court entered a detailed seventeen-page Memorandum of Decision concerning the Terminating Sanctions Motion. The court detailed the history of the disputes between Trustee and Senior, noting Senior's numerous failures to comply with discovery requests and orders of the court, and frequent self-contradictory statements. The court was particularly concerned about the declaration Senior had submitted in opposition to the Terminating Sanctions Motion, in which he proclaimed:

["]I asked my son Eugene Dugger, Jr. and he told me it was none of my business. That is why I answer I DO NOT KNOW. . . .["] Dugger Senior still did not state what it is he asked the Debtor; when he made the inquiry; or which of the RFA or ROG questions he was referring to.

-9-

Memorandum Decision at 11. The court applied the five-part test for imposing terminating sanctions under Civil Rule 37(b)(2). Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 482 F.3d 1091, 1096 (9th Cir. 2007). While finding most of the factors for terminating sanctions were satisfied, the bankruptcy court noted that Senior had appeared pro se, and therefore, the court should treat him more leniently than a party represented by counsel. Instead of entering a default judgment against him at that time, the court directed Trustee to schedule a hearing to prove up his entitlement to default judgment. Specifically, the court indicated that, at hearing,

> Trustee must identify an actual creditor of Debtor with a debt owed at the time of the transfers to Dugger Senior, and he must explain why he is continuing to prosecute this action against Dugger Senior given the Court's summary adjudication that the § 546(a) statute of limitations has expired. Dugger Senior shall be permitted to present arguments on the statute of limitations issue, but nothing further shall be considered.

Memorandum Decision at 10.[14]

The default judgment prove-up hearing took place on January 6, 2011. Senior appeared through newly-retained counsel. Before the hearing, the bankruptcy court provided a detailed tentative ruling indicating its intent to deny entry of default judgment and enter judgment in favor of Senior on all counts. Among the points emphasized in the tentative ruling were:

- Contrary to his assertion, Trustee was not entitled to a judgment simply because the court had stricken his answer and

---

[14] Trustee sought reconsideration of the bankruptcy court's decision, requesting that the requirement of a prove-up hearing be deleted. On July 1, 2010, the court denied the reconsideration motion.

-10-

entered a default against Senior; entry of default judgment is within the broad discretion of the bankruptcy court.

- The amended complaint was not well pled, in that the allegations were in some respects contradictory, and in conflict with the evidence, which was also contradictory; and that the § 546 statute of limitations had expired on January 4, 2007.

- Trustee had not addressed the First Claim for relief against Senior. Because it was an avoidance claim, Trustee had not met his burden to show that the complaint was timely-filed, nor had he shown he was in fact a BFP with no constructive or inquiry notice of Senior's competing ownership rights in the Guadalupe Property.

- The statute of limitations was not equitably tolled.

- The Second Claim asserted that the Guadalupe property was property of the estate on the petition date, but the claim was not well pled. The complaint recognizes that Kothman/GHK was record holder on the petition date and that Junior transferred his equitable interest to Senior many years prior to the petition date.

- The Third and Fourth Claims are premised on Junior's equitable ownership of the Guadalupe Property on the petition date. Trustee has not established that it was property of the estate on the petition date.

- The Fifth and Sixth Claims relate only to the Bexar Property. These claims against Senior are subject to the same statute of limitations defense as were the claims against Mattei. There was no evidence to support equitable tolling.

After hearing lengthy arguments from the parties, the

-11-

bankruptcy court adopted its tentative ruling. It denied entry of default judgment against Senior, and instead, ordered the entry of judgment in favor of Senior. Trustee's request to again amend the complaint was denied.

The bankruptcy court entered an Order Denying Trustee's Request for Default Judgment on April 11, 2011. In that order, the court also entered judgment against Trustee on all claims against Senior.

Trustee filed this timely appeal of the grant of summary judgment to Mattei and denial of default judgment on April 12, 2011.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (E), (H), (N) and (O). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court erred in granting summary judgment to Mattei.

Whether the bankruptcy court abused its discretion in denying default judgment in favor of Trustee against Senior, and in entering judgment in favor of Senior against Trustee.

Whether the bankruptcy court abused its discretion in failing to grant Trustee's request to amend the complaint.

**STANDARDS OF REVIEW**

We review the bankruptcy court's decision to grant summary judgment de novo. Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the court

-12-

correctly applied the relevant substantive law. <u>Fichman v. Media Ctr</u>., 512 F.3d 1157, 1159 (9th Cir. 2008).

The denial of a motion for a default judgment is reviewed for an abuse of discretion. <u>Quarre v. Saylor (In re Saylor)</u>, 178 B.R. 209, 211 (9th Cir. BAP 1995). Likewise, the denial of a motion to amend the pleadings is reviewed for abuse of discretion. <u>AmerisourceBergen Corp. v. Dialysist W., Inc.</u>, 465 F.3d 946, 949 (9th Cir. 2005).

In applying an abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2)implausible, or (3) without support in inferences that may be drawn from the facts in the record." <u>Id.</u> (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. <u>Id.</u>

**DISCUSSION**

**I.**
**The bankruptcy court did not err in granting summary judgment to Mattei.**

Summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

-13-

that the movant is entitled to judgment as a matter of law." Civil Rule 56(c)(2), incorporated by Rule 7056. Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). The trial court does not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830,ext 834 (9th Cir. 1997).

A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party and a fact is "material" if it might affect the outcome of the case. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)). The initial burden of showing there is no genuine issue of material fact rests on the moving party. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Summary judgment dismissing a claim is appropriate where the claim is barred by an applicable statute of limitations and equitable tolling cannot be applied. Congrejo Invs., LLC v. Mann (In re Bender), 586 F.3d 1159, 1165 (9th Cir. 2009) ("If we were to agree . . . that the trustee's complaint is untimely and not entitled to equitable tolling, the litigation would indeed end; this, however, is essentially always true of statute of limitations defenses.").

Mattei sought entry of a summary judgment on Trustee's Fifth

-14-

and Sixth[15] Claims for relief against her. The Fifth Claim asserts that Junior transferred his ownership interest in the Bexar Property to Senior on July 17, 2002, and Senior transferred his ownership interest to Mattei on July 24, 2003. Trustee alleges that both transfers are avoidable under § 544(b).[16] Mattei posed two affirmative defenses to this claim: that the statute of limitations applicable to avoidance actions in § 546(a) bars any action or proceeding under § 544 commenced after the earlier of "two years after entry of the order for relief; or one year after the appointment or election of the first trustee under . . . section 1302 of this Title"[17]; and that Trustee lacked standing to assert the claims because Trustee could not show there was an existing creditor on the petition date that was also a creditor at the time of the transfers. The bankruptcy court agreed with

---

[15] The Sixth Claim, for sale of the Bexar Property, assumes that the Fifth Claim is granted. We affirm the bankruptcy court's decision to dismiss both claims.

[16] **§ 544.  Trustee as lien creditor and as successor to certain creditors and purchasers** . . . (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

[17] **§ 546.  Limitations on avoiding powers**
(a) An action or proceeding under section 544 . . . may not be commenced after the earlier of--
    (1) the later of--
      (A) 2 years after the entry of the order for relief; or
      (B) 1 year after the appointment or election of the first
    trustee under section 702, 1104, 1163, 1202, or 1302 of this
    title if such appointment or such election occurs before the
    expiration of the period specified in subparagraph (A); or

    (2) the time the case is closed or dismissed.

-15-

Mattei on these points, and we affirm the bankruptcy court's decision.

The Statute of Limitations Defense. This adversary proceeding was commenced on January 2, 2008. Because § 301(b) instructs that an "order for relief" is deemed entered when Debtors' voluntary bankruptcy petition was filed on January 4, 2005, there can be no dispute in this appeal that the § 546(a)(1)(A) two-year limitations period concerning avoiding action expired on January 4, 2007.[18] Therefore, Trustee's action against Mattei was not timely filed, and unless the limitations statute was equitably tolled, summary judgment on the claim is required. In re Bender, 586 F.3d at 1165.

The two-year limitations period in § 546(a)(1) is subject to equitable tolling. Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc. v. Ernst & Young), 14 F.3d 1380, 1384 (9th Cir. 1994). However, the case law of this circuit instructs that equitable tolling is rarely applied and disfavored. "The threshold for obtaining equitable tolling is very high," Townsend v. Knowles, 562 F.3d 1200, 1205 (9th Cir. 2009). Equitable tolling is "unavailable in most cases." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). See Cal. Franchise Tax Bd. v Kendall (In re Jones), 657 F.3d 921, 926 (9th Cir. 2011) (holding that equitable tolling is applied "only sparingly" because "Congress must be presumed to draft limitations periods in light of equitable tolling principles which generally apply to statutes of

---

[18] Indeed, the "earlier" alternative limitations period provided in §546(a)(1)(B), i.e., one year from the appointment of the first trustee, Skelton, expired on January 4, 2006.

limitations."). Indeed, in cautioning against unjustified tolling of statutes of limitation, the Ninth Circuit has warned, "We should not trivialize the statute of limitations by promiscuous application of tolling doctrines." Santa Maria v. P. Bell, 202 F.3d 1170, 1179 (9th Cir. 2000) (quoting Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th Cir. 1990)).

The equitable tolling doctrine held in its original formulation that the limitations period does not run while a party is unaware of a wrong without any fault or lack of diligence on his part. Id. As the doctrine of equitable tolling evolved, the additional requirement that some extraordinary circumstance stood in its way and prevented timely filing took on equal and in some ways greater significance. Holland v. Fla., 130 S.Ct. 2549, 2553 (2010); Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005).

Trustee, as proponent of equitable tolling, bears the burden of proving its should be applied. Hinton v. Pac. Enters., 5 F.3d 391, 395 (9th Cir. 1993) ("the burden to plead facts which would give rise to equitable tolling falls upon the plaintiff"); Roberts v. Marshall, 627 F.3d 768, 772 (9th Cir. 2010)("A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). Trustee has not carried that burden in this case because he failed to adequately address the second prong of the required elements for equitable tolling, whether there were extraordinary circumstances that stood in the way of his filing a timely complaint.

In fact, the only clear reference to the extraordinary circumstances prong appears in Trustee's Reply Brief at 3:

-17-

> Because [Trustee] did not know the basis of claims upon which to sue, and particularly under the facts and circumstances of this case, these also constitute "extraordinary circumstances," additionally supporting equitable tolling.

That Trustee did not "know the basis of claims upon which to sue," is not grounds for applying equitable tolling. Equitable tolling does not apply simply because a party was unaware of the claim; it must be shown that some obstacle to the timely commencement of an action stood in the party's way. Irwin, 498 U.S. at 96.[19]

Trustee explicitly downplayed the importance of the second prong and the need to prove extraordinary circumstances that stood in the way of timely filing. He argues that extraordinary circumstances "merely provide[] an alternative basis for finding equitable tolling." Reply Br. at 3 n.4.

By neglecting his responsibility to prove the existence of extraordinary circumstances, Trustee failed in his burden of proof and his equitable tolling argument must fail.

Trustee argued in the bankruptcy court, and in this appeal, that all he needed show to warrant application of the equitable tolling doctrine to these facts was that the chapter 13 trustee had acted diligently:

> Where the party has been injured by fraud, and "remains

---

[19] Trustee never makes clear what he means by the "facts and circumstances of the case" that would support equitable tolling or specifically what extraordinary circumstances "stood in the way" of Trustee's filing a timely complaint. What "facts" we are able to glean from Trustee's argument include the affidavits concerning property details or Junior's character. The court properly rejected those affidavits as either irrelevant, or probative of a character with which the court was well aware. The other facts related to Junior's ex-wife, which the bankruptcy court dismissed as too remote. And as discussed below, none of those facts were probative of extraordinary circumstances that stood in the way of Trustee's timely filing.

-18-

> in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party. <u>Bailey v. Glover</u>, 88 U.S. (21 Wall) 342, 348 (1875).

<u>Holmberg v. Armbrecht</u>, 327 U.S. 392, 396 (1949). Tr. Op. Br. at 24. Trustee then quotes the bankruptcy court's statement, "It's not the fault, if you will, necessarily of the Chapter 13 Trustee." Tr. Op. Br. at 31. Trustee concludes that, based on the bankruptcy court's statement, "the statute of limitations was equitably tolled <u>as a matter of law</u>." Tr. Reply Br. at 3 (emphasis in original).

Trustee's argument that due diligence of a trustee is the only requirement for applying equitable tolling is simply not current law. He relies on outdated and superseded case law. While he cites it in passing, Trustee does not address the Supreme Court's decision in <u>Pace v. DiGuglielmo</u>, 544 U.S. 408 (2005). <u>Pace</u> clarified prior case law that due diligence alone was insufficient to require equitable tolling, and makes clear that "extraordinary circumstances" are also necessary to invoke the doctrine:

> Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. <u>See, e.g.</u>, <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 96, 112 L. Ed. 2d 435, 111 S. Ct. 453 (1990).

<u>Id</u>. at 418. In short, the modern burden of proof to invoke equitable tolling requires that Trustee show <u>both</u> due diligence and the presence of extraordinary circumstances. Contrary to Trustee's position, extraordinary circumstances are not an

-19-

"alternative" ground for relief; their existence is a mandatory element:

> A "petitioner" is "entitled to equitable tolling" if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" <u>and prevented timely filing</u>. <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669.

<u>Holland</u>, 130 S.Ct. at 2553 (emphasis added).

The <u>Holland</u> decision also indicates a slight shift in the balance to be accorded these factors. <u>Holland</u> envisions that a fairly modest showing of diligence is required to satisfy the first requirement for invoking equitable tolling: "The diligence required for equitable tolling purposes is 'reasonable diligence' not 'maximum feasible diligence.'" 130 S.Ct. at 2565. In contrast, the second factor requiring a showing of "extraordinary circumstances" is of heightened emphasis. <u>Id.</u>

The amicus brief advocates that a chapter 13 trustee's failure to inquire of the debtors about property transfers made up to four years before bankruptcy does not reflect a lack of reasonable diligence. While there is evidence to show that Skelton was diligent in his examination of the Debtors during the chapter 13 case, even though he did not uncover the target transfers, the bankruptcy court was not particularly interested in this aspect of Trustee's equitable tolling argument:

> TRUSTEE'S COUNSEL: Are you finding that Skelton . . . did not act with reasonable diligence because —
>
> THE COURT: Why would I have to find that? Why would I have to find that?
>
> COUNSEL: What other basis is there?
>
> THE COURT: Even if there weren't a trustee, the

-20-

> statute's run. What I'm saying is it makes no difference. It makes no difference. I don't have to find that Skelton is negligent. All I can find is that he didn't ask the question.

Hr'g Tr. 27:22-28:9[20] As can be seen from this colloquy, and contrary to Trustee's argument in his briefs, the bankruptcy court did not rule against Trustee on the first prong of the equitable tolling argument. However, the bankruptcy court did specifically conclude that there was no evidence of extraordinary circumstances:

> There is no evidence of wrongful conduct or fraud by the debtor or any other extraordinary circumstances during the relevant time period which justify equitable tolling. Debtor did not schedule the [Bexar or Guadalupe] property because he was not the record owner. The property was transferred by deed recorded 7/12/02; the SOFA question was answered accurately as there were no transfers within the 1 year of filing his Ch. 13.

Minute Order, March 5, 2009 at ¶1(B).

---

[20] Although the bankruptcy court did not consider the chapter 13 trustee's diligence in its analysis, much of the information in the NACTT amicus brief actually supports the bankruptcy court's decision that the chapter 13 trustee's actions were not relevant. The chapter 13 system is focused on the debtor's repayment of debts through future income, not from assets of the bankruptcy estate. Olick v. Parker & Parsley Petroleum Co., 145 F.3d 513, 516 (2d Cir. 1998). Although chapter 13 trustees have authority to investigate the prepetition estate, §§ 1302 (b)(1), 704(a)(4) (investigate the financial affairs of the debtor) and §§ 544, 547, 548 (avoidance of certain prepetition transfers), it is very rare for the chapter 13 trustee to conduct independent searches for undisclosed assets. And although the Bankruptcy Code technically requires surrender of the records related to property of the estate, § 521(a)(4), this duty is not usually enforced in a typical chapter 13 case. As a leading treatise observes, "It is doubtful that much purpose is served by the turnover of more financial information than is specifically required to answer the questions in Official Forms Nos. 6 and 7."). 7 William L. Norton, Jr., NORTON BANKRUPTCY LAW & PRACTICE § 145:2 (West Publishing Co., 3d ed., 2011). The Official Forms do not require disclosure of transfers of assets more than two years (one year at the time of filing this bankruptcy case) before the petition date.

Like the bankruptcy court, we conclude that Trustee failed to sustain his burden of proof to establish both that there was due diligence and existence of extraordinary circumstances that would equitably toll the statute of limitations in § 546(a)(1)(A). The bankruptcy court decided that the second prong was absent in that there were no extraordinary circumstances present in this case. Therefore, the bankruptcy court correctly ruled that § 546(a) barred the Fifth Claim against Mattei in the amended complaint for avoidance of the transfer to her of the Bexar Property. As a result, summary judgment was also appropriate as to the Sixth Claim, wherein Trustee sought the right to sell that property. In re Bender, 586 F.3d at 1165.

Trustee's standing to assert the § 544(b) avoidance claims.

That Trustee's avoidance claims are barred by the applicable statute of limitations is alone sufficient to support entry of a summary judgment against Trustee. Nevertheless, as an alternative ground to support summary judgment in favor of Mattei, the bankruptcy court determined that Trustee did not have standing to assert avoidance claims under § 544(b) because he did not establish the existence of a creditor owed a debt on both the transfer date and the petition date. Based on our review of the facts, law and procedural posture in this case, we conclude that the bankruptcy court erred in this alternative ruling. Instead, in our view, where, as here, a trustee seeks to avoid a transfer under § 544(b)(1) by applying a state law implementation of the Uniform Fraudulent Transfer Act ("UFTA"), Section 4, the trustee need not establish the existence of an actual creditor on the transfer date.

-22-

A trustee must allege the existence of an unsecured creditor as of the petition date. That is always the case under § 544(b)(1) ("trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title . . . ."). But nonbankruptcy state law determines whether the creditor must also have held a claim as of the time of the transfer attacked. Here, under the theory pled by Trustee, there was no need for him to allege that there was a creditor as of the petition date who also held a claim as of the transfer date.

Trustee sought relief under the Texas version of the UFTA, Tex. Bus. & Com. Code § 24.001 et seq. ("TUFTA"), but did not specify which provision of TUFTA. We presume Trustee relies on either TUFTA § 24.005(a)[21] or § 24.006(a).[22] The correct source of

---

[21] § 24.005. Transfers Fraudulent As to Present and Future Creditors
   (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

[22] § 24.006. Transfers Fraudulent As to Present Creditors
   (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the
(continued...)

-23-

Trustee's state law rights matters, however. If it is TUFTA § 24.006, then Trustee failed to plead and prove the claim for relief. Section 24.006 mirrors Section 5 of the UFTA, which allows creditors of an insolvent debtor to avoid transactions made by an insolvent debtor for less than a reasonably equivalent value. Under UFTA § 5, and TUFTA § 24.006, the creditor must have held creditor status as of the time of the transfer.

But Trustee did not allege Junior was insolvent at the time of either of the challenged transactions. His complaint thus must have encompassed relief under TUFTA § 24.005, which in turn mirrors § 4 of the UFTA.[23] UFTA § 4 preserves centuries of fraudulent transfer law by extending standing to future creditors for three types of fraudulent transfers. These are: (1) transfers made with the actual intent to hinder, delay, or defraud — UFTA § 4(a)(1); (2) transfers made by a debtor in business which were for less than a reasonably equivalent value and which left the debtor with unreasonably small assets — UFTA § 4(a)(2)(I); and (3) transfers made which were for less than a reasonably equivalent value and after which the debtor actually or reasonably believed he or she would incur debts beyond the debtor's ability to pay as they became due — UFTA § 4(a)(2)(ii). Section 4 states that, "A transfer made or obligation incurred by a debtor is

[22](...continued)
debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

[23] With minor modifications not relevant here, TUFTA § 25.006 mirrors UFTA § 5, and TUFTA § 25.005 mirrors UFTA § 4.

-24-

fraudulent as to a creditor, <u>whether the creditor's claim arose before or after the transfer was made or the obligation was incurred</u>, if the debtor made the transfer or incurred the obligation . . . ."  UFTA § 4 (emphasis added).  As a consequence, for transfers that otherwise fit within § 4, Trustee only needed to identify a creditor that, as of the petition date, could have pursued the UFTA action.  And since neither UFTA § 4 nor TUFTA § 24.005 require such a creditor to also have been a creditor at the time of the transfer, neither does § 544(b).

Professor Alan Resnick, co-editor-in-chief of <u>Collier on Bankruptcy</u>, recently summarized the relevant law:

> Under both the UFTA and the UFCA, a transfer made with actual intent to hinder, delay, or defraud any creditor of the debtor is a fraud on both present and future creditors. Therefore, if a debtor makes a transfer with the intent of putting assets out of the reach of creditors, a future creditor whose claim did not exist when the transfer was made would have standing to bring a fraudulent conveyance action to avoid the transfer and recover the assets from the transferee.
>
> The UFTA and UFCA also give future creditors standing to avoid a constructive fraudulent conveyance, but only if the action is based on the debtor's receipt of less than reasonably equivalent value for the transferred property when the debtor was left with unreasonably small capital or when the debtor intended or believed it would incur debts beyond its ability to pay as they mature.  If the claim of constructive fraudulent conveyance is based on the insolvency of the debtor, it is a fraud only against existing creditors. A future creditor does not have the right to bring a fraudulent conveyance claim based on the allegation that the debtor received less than reasonably equivalent value in connection with the transfer and was insolvent or rendered insolvent by the transfer.

Alan N. Resnick, <u>Finding the Shoes That Fit: How Derivative Is the Trustee's Power to Avoid Fraudulent Conveyances under Section 544(b) of the Bankruptcy Code?</u>, 31 CARDOZO L. REV. 205, 209-10 (2009)(footnotes omitted).

-25-

For these reasons, we conclude that the bankruptcy court erred in holding that Trustee lacked standing to prosecute the § 544(b) avoidance claims under TUFTA, and consequently, that summary judgment should be entered in favor of Mattei and against Trustee. Again, however, because Trustee's claims were time-barred under § 546(a), the court's error was harmless.[24]

## II.
**The bankruptcy court abused its discretion in denying Trustee's request to amend the complaint and in granting judgment dismissing Trustee's claims against Senior.**

At the prove-up hearing, the bankruptcy court declined to enter a default judgment against Senior and, without warning to Trustee, granted judgment to Senior on all claims asserted against him. This approach to concluding this action is problematic. The Panel has held that, under most circumstances, a bankruptcy court may not enter a dispositive judgment against the non-defaulting party in connection with a Civil Rule 55 prove-up hearing:

> While a trial court has great discretion in considering issues and evidence in a hearing pursuant to Rule 55(b)(2), we find no authority that would allow a trial court to enter judgment in favor of the defaulting party following such a hearing. To enter such a judgment against the non-defaulting party because of the failure of that party to sustain its burden of proof would make the hearing under Rule 55(b)(2) the same as a

---

[24] Trustee also argues that the bankruptcy court erred by entering a summary judgment when Trustee had requested time for additional discovery pursuant to Civil Rule 56(f). Although Trustee's counsel discussed the need to do more discovery at the motion hearing, Trustee never filed a motion under Rule 56(f) or the required affidavit that he could not present facts essential to justify its opposition. Trustee also did not clearly demonstrate that the additional evidence he sought to discover existed, and that it would prevent summary judgment. Because Trustee did not comply with the rules, the bankruptcy court therefore did not abuse its discretion in declining to grant Trustee an opportunity for additional discovery. Chance v. Pac-Tel Teletrac, Inc., 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

-26-

trial on the merits. *Valley Oak Credit Union v. Villegas (In re Villegas)*, 132 B.R. 742, 746-47 (9th Cir. BAP 1991); *see also* *Franchise Tax Bd. v Rowley (In re Rowley)*, 208 B.R. 942, 944 (9th Cir. BAP 1997) (holding that this Panel is bound by its published decisions).

The stated purpose for the *Villegas* rule is to avoid forcing the non-defaulting party "to trial without having the benefit of the procedural protections offered by the Federal Rules of Civil Procedure, including the opportunity to conduct discovery . . . ." *In re Villegas*, 132 B.R. at 746-47. At a minimum, though, *Villegas* clearly signals that a bankruptcy court should proceed cautiously before dismissing actions in the context of default proceedings. Here, the impact of the bankruptcy court's decision immediately to enter judgment in favor of Senior was particularly severe, since Senior had been sanctioned by the bankruptcy court for his repeated, willful failures to cooperate with Trustee's discovery efforts. Dismissal of Trustee's claims for lack of proof in connection with the prove-up hearing was therefore inappropriate, and that aspect of the bankruptcy court's judgment must be vacated.

We also believe that the bankruptcy court abused its discretion in denying Trustee's request to amend the pleadings and, in particular, the amended complaint, to conform to the proof that was submitted in connection with Trustee's request for entry of a default judgment against Senior as to Claims Two and Three.[25]

---

[25] Claim Two asserted that the Guadalupe Property was property of the estate within the meaning of § 541(a). Claim Three sought

(continued...)

-27-

In particular, at the prove-up hearing, Trustee requested permission from the bankruptcy court to amend the complaint to conform to the proof Trustee had submitted regarding the existence of a so-called "resulting trust." Hr'g Tr. 33:21-24, January 6, 2011. The bankruptcy court responded:

> And the court's not entertaining the Trustee's request to do yet another amended complaint. A default's already been entered on this amended complaint, and this amended complaint is the platform on which the trustee's action against Dugger Sr. stands or falls. And so there's not going to be a second bite or third bite at the apple. This amended complaint was filed in 2008. It's time.

Hr'g Tr. 37:3-10, January 6, 2011.

We understand the bankruptcy court's statement to mean that it was denying Trustee's request to amend the pleadings based upon undue delay for which Trustee was responsible. However, in our view, the facts do not support an inference that Trustee was to blame for any delay in properly pleading a resulting trust claim. Senior, not Trustee, was principally responsible for the undue delay in the prosecution of this action. Indeed, the bankruptcy court had recently imposed drastic sanctions for the long delays in these proceedings caused by the antics of Senior. Under these circumstances, it was not appropriate to penalize Trustee for any delay occasioned by Senior's bad conduct. Instead, the facts of this case clearly favor allowing Trustee an opportunity to amend the complaint. Given the strong public policy in the Ninth Circuit favoring amendment, the bankruptcy court's denial of

---

[25](...continued)
avoidance under § 549 of the alleged post-petition transfer of the Guadalupe Property.

-28-

Trustee's request to further amend the complaint was an abuse of discretion. C.F. v. Capistrano Unified Sch. Dist., 654 F.3d 975, 986 (9th Cir. 2011) ("Absent prejudice, or a strong showing of any of the remaining Foman [v. Davis, 371 U.S. 178 (1962)] factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend.") (emphasis in original);[26] Chudacoff v. Univ. Med. Ctr., 649 F.3d 1143, 1152 (9th Cir. 2011) (leave to amend a party's pleadings under Civil Rule 15(a) "should [be] freely give[n] . . . when justice so requires," and "generally shall be denied only upon showing of bad faith, undue delay, futility, or undue prejudice to the opposing party.").

The Second Claim asserts that GHK Enterprises, LP holds only legal title to the Guadalupe Property; this claim sought to avoid the various transfers of that property among the Dugger family members. Of course, these allegations were shown to be incorrect as of the time of the prove-up hearing, because the Guadalupe Property had been sold to the Weins[27] during the bankruptcy case, and Senior had received the proceeds of that sale. The bankruptcy court ruled that Trustee failed to adequately plead this claim.

---

[26] The "Foman" factors are "undue delay, bad faith or dilatory motive on the part of the movant." Foman, 371 U.S. at 182 (emphasis added). We note that the Foman factors relate to the dilatory conduct of the movant as grounds for denial of amendment. Here clearly the dilatory conduct was Senior's, not the movant Trustee's. In commenting on those factors, the Supreme Court made it very clear that failure to allow amendment without one of those factors present and "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Id.

[27] The parties apparently agree that the Weins were bona fide purchasers for value without knowledge of the adversary proceeding disputes over entitlements to this property.

-29-

While, as of the prove-up hearing, there was no longer an avoidance question, Trustee could assert a claim for turnover of the funds received from the post-bankruptcy sale of the property from Senior. To do so would of course require a change to the allegations in the complaint.

The Trustee's Third Claim against Senior asserted his right to avoid the post-petition transfer from Senior to the Weins in 2007. But as noted above, at the time the complaint was filed, Trustee was not aware that the property had been transferred to BFPs for value and without knowledge of the disputes. The Third Claim was premised on Debtor's equitable ownership of the Guadalupe Property on the petition date, and the court ruled that Trustee had not established that it was property of the estate on the petition date. The Third Claim would need to be amended to reflect that Trustee was not seeking avoidance of a post-petition transfer and recovery of the proceeds, but rather some sort of action directly against Senior for turnover of alleged estate funds.

It is fairly clear that Trustee was seeking to modify Claims Two and Three because the court had ruled against it on the avoidance issues. Trustee argued that it had not relied exclusively on the avoidance claims, but he was also attempting to recover the proceeds from the sale of the Guadalupe Property from Senior because the Guadalupe Property was property of the estate under § 541(a). It is also clear that Trustee wanted to conform the pleadings to the proof to allow Trustee to develop the resulting trust theory. Although this argument was obliquely made in the briefs, Trustee's counsel raised it at both the summary

-30-

judgment hearing and the prove-up hearing. Hr'g Tr. 6:18-7:4, March 5, 2009; Hr'g Tr. 11:22-12:19, January 6, 2011. Counsel for Mattei and Senior also addressed it. Hr'g Tr. 28:21-25, January 6, 2011.

According to Trustee, a resulting trust arises in equity, and is implied by operation of state common law. Morrison v. Farmer, 210 S.W. 245 (Tex. Ct. App. 1949). In determining whether such a trust exists, courts look primarily to who paid the consideration for the acquisition of the property; this is also known as the "equitable doctrine of consideration." In re Torres, 827 F.2d 1299, 1300 (9th Cir. 1987). If Trustee's arguments are correct that Junior paid for the Guadalupe Property, but that Senior received all benefit from that transaction, then, arguably, a resulting trust may have existed whereby Senior held the property in trust for Junior. Even if the property was later transferred by Senior, the proceeds of that transaction representing the value of the Guadalupe Property may constitute property of Junior's bankruptcy estate under § 541(a), without regard to any avoidance issues.

We make no assumptions concerning the ability of Trustee to prevail on a resulting trust theory. Nevertheless, the seeds of such a theory are sufficiently embodied in the Second and Third Claims in the amended complaint such that, under the circumstances, Trustee's request to amend the complaint — to conform to the facts as shown by his proof submitted to the bankruptcy court — was appropriate.

**CONCLUSION**

We AFFIRM the bankruptcy court's grant of summary judgment to

Mattei as to Trustee's claims against her.  However, we VACATE the bankruptcy court's entry of judgment in favor of Senior dismissing this action, and REMAND this action to the bankruptcy court with instructions to allow Trustee to amend the complaint.