# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: WILLIAM P. BENDER,
                                    *Debtor,*

_____

CONGREJO INVESTMENTS, LLC, a
Washington limited liability
company,
                                    *Appellant,*

            v.

DIANE M. MANN, Chapter 7
Trustee,
                                    *Appellee.*

No. 08-15027

BAP No.
AZ-07-01178-NKD

In re: WILLIAM P. BENDER,
                                    *Debtor,*

_____

DIANE M. MANN, Chapter 7
Trustee,
                                    *Appellant,*

            v.

CONGREJO INVESTMENTS, LLC, a
Washington limited liability
company,
                                    *Appellee.*

No. 08-15225

BAP No.
AZ-07-01178-NKD

OPINION

14895

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Neiter,[1] Klein and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
September 3, 2009—San Francisco, California

Filed November 5, 2009

Before: J. Clifford Wallace, Diarmuid F. O'Scannlain, and
Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Wallace

---

[1] Hon. Richard M. Neiter, U.S. Bankruptcy Judge for the Central District of California, sat by designation.

## COUNSEL

Christopher A. LaVoy, Esq., Phoenix, Arizona, for apellant-appellee Congrejo Investments, LLC.

David W. Engelman, Esq., Phoenix, Arizona, for appellant-appellee Diane M. Mann, Chapter 7 Trustee.

## OPINION

WALLACE, Senior Circuit Judge:

This appeal arises out of an action brought by bankruptcy trustee Diane Mann (trustee), seeking avoidance of the transfer of a parcel of real property from a debtor in bankruptcy, William Bender, to the defendant, Congrejo Investments, LLC (Congrejo), a Washington limited liability company formed and managed by Bender. Congrejo appeals from a portion of the decision by the Bankruptcy Appellate Panel of the Ninth Circuit (BAP), in which the BAP affirmed the bankruptcy court's determination that the doctrine of equitable tolling applied to the trustee's filing of this adversary proceeding. The trustee cross-appeals from a different portion of the BAP's order in which it vacated the bankruptcy court's summary judgment in favor of the trustee and remanded to the bankruptcy court for further proceedings. Because we hold that the appealed-from BAP decision was not final under 28 U.S.C. § 158(d)(1), we therefore lack jurisdiction to hear this appeal and remand the case to the bankruptcy court for further proceedings.

## I.

Sometime before 1992, Bender became the owner of a plot of land in Hawaii. In 1993, Bender executed a quitclaim deed that purported to convey title to this land to an entity named the William P. Bender Trust (Trust). There is very little evidence regarding the nature of the Trust or its operations, aside from Bender's assertion that the beneficiaries of the Trust are himself, his brother, and his sister. The Trust provided no consideration to Bender in exchange for the Hawaii property. The property was mortgaged, developed, and divided into three parcels, Lots A-1, A-2 and A-3. Lots A-1 and A-2 were sold and are not involved in this appeal.

In 1997, Bender filed a voluntary petition for relief under Chapter 12 of the Bankruptcy Code. In 1998, the case was

converted to a Chapter 11 proceeding, and later, in 2000, to a Chapter 7 proceeding. Mann was appointed as the Chapter 7 trustee of the bankruptcy estate.

In February 1999, while Bender's bankruptcy petition was pending, the Trust executed a quitclaim deed purporting to convey title to Lot A-3 back to Bender. Again, no consideration was exchanged for the conveyance. Bender never disclosed an interest in Lot A-3 in any of his bankruptcy schedules or statements, either before or after the February 1999 transfer of the property from the Trust to Bender. Bender's bankruptcy schedule B contained a one-word reference to a "trust," but did not assign a value. Bender's schedules did not list the holder of a mortgage on the property as a creditor.

On May 31, 2000, in exchange for no consideration and without the approval of the bankruptcy court, Bender recorded a quitclaim deed purporting to convey title to Lot A-3 to Congrejo, a company he managed. Congrejo's members are Bender, his brother, and his sister — the same three individuals who, Bender has claimed, are the beneficiaries of the Trust. On June 26, 2002, the trustee filed an adversary complaint against Congrejo seeking to avoid the 2000 transfer of Lot A-3 from Bender to Congrejo pursuant to 11 U.S.C. § 549, which authorizes a trustee to avoid a transfer of estate property occurring after commencement of the bankruptcy action and without authorization by the court. 11 U.S.C. § 549(a)(1), (a)(2)(B) (2009).

The trustee moved for summary judgment against Congrejo. In a cross-motion for summary judgment, Congrejo argued that the trustee's action was barred by the statute of limitations set forth in 11 U.S.C. § 549(d), because it was not filed within two years of the deed's execution. *See id.* § 549(d)(1). Congrejo also argued that the transfer could not be avoided because Lot A-3 was not property of the bankruptcy estate. Congrejo asserted that a bankruptcy estate is generally comprised of all "legal or equitable interests of the

debtor in property *as of the commencement of the case*," id. § 541(a)(1) (emphasis added), and property acquired by the debtor after the date of filing belonged to the debtor. *See Smith v. Kennedy (In re Smith)*, 235 F.3d 472, 478 (9th Cir. 2000). Thus, Congrejo urged, Lot A-3 was not part of the bankruptcy estate because Bender did not own it at the time he filed his bankruptcy petition. Rather, at the time of filing, Lot A-3 was owned by the Trust and Bender's re-acquisition of title to the property occurred post-petition.

The bankruptcy court agreed with Congrejo that the trustee's action had been filed outside of the statute of limitations, but held that there were disputes of material fact relating to the application of the doctrine of equitable tolling. After conducting an evidentiary hearing on that issue, the bankruptcy court concluded that the statute of limitations should be equitably tolled. Turning to the trustee's assertion that Lot A-3 was property of the estate, the bankruptcy court, relying on *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423 (9th Cir. 1984), held that Lot A-3 was "so sufficiently rooted in [Bender's] pre-bankruptcy past that it should not be excluded from property of the bankruptcy estate." Thus, the bankruptcy court concluded, Lot A-3 was property of the estate and the trustee could avoid the 2000 transfer of that property from Bender to Congrejo.

Congrejo appealed to the BAP, seeking review of the bankruptcy court's conclusion that the statute of limitations was tolled and that Lot A-3 was property of the estate. The BAP affirmed the bankruptcy court's holding that equitable tolling was appropriate. On the second issue, whether Lot A-3 was estate property, the BAP held that the bankruptcy court had incorrectly applied *In re Ryerson*, 739 F.2d 1423, and vacated that portion of the bankruptcy court's order. The BAP determined that there was a genuine issue of material fact as to whether the Trust was valid or a sham. If the Trust was the alter ego of Bender, then Lot A-3 would have been the property of Bender at all relevant times prior to the 2000 transfer

and therefore the property of the bankruptcy estate. Accordingly, the BAP remanded the case to the bankruptcy court for trial regarding these issues.

Congrejo appeals from the BAP's decision to our court, arguing that the BAP erred in affirming the bankruptcy court's application of equitable tolling. The trustee cross-appeals from the BAP's decision to vacate the bankruptcy court's summary judgment in her favor. The trustee also maintains that our court lacks jurisdiction to hear this appeal because the BAP's decision does not constitute a final, appealable order. We now turn to that jurisdictional question.

## II.

Under 28 U.S.C. § 158(d)(1), circuit courts have jurisdiction over appeals from "all final decisions, judgments, orders, and decrees" entered by a BAP. The question here is whether the BAP's order was final. 28 U.S.C. § 158(d)(1) (2009).

[1] In the context of other appeals, such as those pursuant to 28 U.S.C. § 1291, finality is a relatively straightforward inquiry: we ask whether the decision presented for review "ends the litigation on the merits and leaves nothing for the district court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981) (internal quotation marks and citations omitted). In the past, however, we have taken a more flexible approach to jurisdiction in the context of bankruptcy appeals pursuant to section 158(d), because "[t]he unique nature of bankruptcy procedure dictates that we take a pragmatic approach to finality" and use "a more liberal finality standard" for section 158(d) than for section 1291. *Bonner Mall P'ship v. U.S. Bancorp Mortgage Co. (In re Bonner Mall P'ship)*, 2 F.3d 899, 903 (9th Cir. 1993).

[2] In *Connecticut National Bank v. Germain* (*Germain*), the Supreme Court cast doubt on our application of a flexible standard to section 158(d), by reasoning that sections 158(d)

and 1291 were coextensive in their application to district courts acting as bankruptcy appellate courts. 503 U.S. 249, 253 (1992). If our appellate jurisdiction pursuant to sections 158(d) and 1291 is functionally coextensive, then, "[t]o afford the same jurisdiction, both statutes would have to have the same finality standards in bankruptcy proceedings." *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 968 F.2d 887, 892 (9th Cir. 1992) (*Vylene*) (citation omitted); *see also Saxman v. Educ. Credit Mgmt. Corp. (In re Saxman)*, 325 F.3d 1168, 1177-78 (9th Cir. 2003) (Wallace, J., dissenting) (observing that *Germain* invalidates cases that treat finality under section 158(d) differently than finality under section 1291). *But see In re Bonner Mall P'ship*, 2 F.3d at 904 n.11 (stating in dicta that "nothing in *Germain* casts doubt upon the liberal standard for finality we have adopted regarding [section] 158(d)"). No post-*Germain* case has concluded, however, that our earlier precedent must be overturned. *Vylene* avoided the challenge presented by *Germain* to our circuit's case law by holding that jurisdiction was lacking even under the older, more flexible finality standard. *Vylene*, 968 F.2d at 894. Similarly, in *Stanley v. Crossland, Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort, Ltd.)* (*Lakeshore*), our court stated that, "*Germain* implies that a decision appealable under section 158(d) also should be appealable under traditional applications of section 1291 in nonbankruptcy proceedings," but concluded it was unnecessary to decide whether *Germain* curtailed the circuit's section 158(d) finality standard because the decision presented for review was not final under either standard. 81 F.3d 103, 106 (9th Cir. 1996).

**[3]** This case once again begs for an answer to the critical question: in light of *Germain*, must we abandon our modification of what should be the proper finality standard for bankruptcy appeals? Circuit precedent may be overturned without an en banc rehearing if the Supreme Court has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v.*

*Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003). Like *Vylene* and *Stanley*, however, we need not decide this broader question, because we conclude that the BAP's decision was not final even under our circuit's flexible finality standard.

## III.

**[4]** We have divined four factors to determine whether a BAP's decision to remand a case to the bankruptcy court is "final" under section 158(d): "(1) the need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause either party irreparable harm." *Lakeshore*, 81 F.3d at 106, citing *Vylene*, 968 F.2d at 895-96.

Some of our opinions have, somewhat confusingly, applied a standard that was set forth in the pre-*Germain* case of *King v. Stanton (In re Stanton)*, 766 F.2d 1283 (9th Cir. 1985) (*Stanton*). In *Stanton*, we observed in a footnote that jurisdiction might be appropriate even where a BAP has remanded to the bankruptcy court for fact-finding, if the appeal involved a central legal issue, the resolution of which would either (1) dispose of the case and obviate the need for the fact-finding, or (2) materially aid the disposition of the case on remand. *Id.* at 1287 n.8. This concept was absorbed into this circuit's later case law on finality. *See, e.g.*, *In re Bonner Mall P'ship*, 2 F.3d at 904 ("We believe that the *Stanton* principle is sound and we adopt it here."); *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 911 (9th Cir. 1988) (applying *Stanton* where underlying facts were not disputed and legal issues predominated). Applying the reasoning of the *Stanton* footnote, some cases have observed that if the matters to be contemplated on remand "concern primarily factual issues about which there is no dispute, and the appeal concerns primarily a question of law, then the policies of judicial efficiency and finality are best served by our resolving the question now." *North Slope Borough v. Barstow (In re Bankruptcy Est. of MarkAir)*, 308

F.3d 1057, 1060 (9th Cir. 2002) (internal quotation marks and citation omitted); *see also Countrywide Home Loans, Inc. v. Hoopai (In re Hoopai)*, 581 F.3d 1090, 1096 (9th Cir. 2009) (concluding that the BAP's order was final where the issues on appeal were "primarily legal, and concern[ed] undisputed facts," and the "fact-finding directed on remand would not address these issues.").

Those cases following the *Stanton* footnote have been variously described as applying a "narrow exception[ ]" to the *Vylene* factor test, *see, e.g.*, *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1038 (9th Cir. 2000), or a separate, free-standing alternative test. *See, e.g.*, *United States v. Fowler (In re Fowler)*, 394 F.3d 1208, 1211 (9th Cir. 2005) (observing that "[t]wo tests have developed in the Ninth Circuit to address the question of finality for bankruptcy proceedings"); *Neilson v. United States (In re Olshan)*, 356 F.3d 1078, 1082-83 (9th Cir. 2004) (describing that recent cases had applied the two-factor *Stanton* test and the *Vylene* four-factor test "interchangeably" or "both in conjunction and separately"). Nevertheless, in *Lakeshore* we concluded that *Vylene* set forth the proper analysis:

> Under the direction of *Germain*, *Vylene* refined *Stanton* and *Kelly* and set forth the considerations we should balance in determining whether a district court's decision remanding a case to the bankruptcy court is a final decision. . . . In *Bonner Mall*, we recognized that *Vylene* set forth the proper approach. . . . For additional guidance, however, we referred to the *Stanton* dicta . . . .

*Lakeshore*, 81 F.3d at 106-07. In *Lakeshore* we clarified that, although some cases frame their analysis in terms of the *Stanton* dicta only, those cases were not heard en banc and "could not have overruled *Vylene*, [and thus] we must assume that the court implicitly held that the considerations set forth in *Vylene* weighed in favor of exercising jurisdiction." *Id.* at

107; *see also Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1188 (9th Cir. 2000) ("While the court has not always explicitly considered these [*Vylene*] factors, determination of a remanding decision's finality must be based on analysis of these factors").

Of course, all of this is troubling for litigants. Too often they are placed in a position to guess about whether there is appellate jurisdiction. Afraid of guessing wrong to the possible detriment of their client's interests, lawyers appeal to find the answer with its attendant financial costs to litigants and added burden to an already over-burdened appellate judiciary. Adhering only to the Supreme Court's *Germain* test might well be the only effective and fair solution.

## IV.

Although we recognize the continuing drift of additions and substitutes to the *Vylene* test, with their resultant movement away from real finality, we conclude that until the court embraces *Germain*, we should follow *Lakeshore*. We therefore turn to the application of the four *Vylene* factors.

**[5]** The first factor, the need to avoid piecemeal litigation, weighs against our jurisdiction here. "[W]hen an intermediate appellate court remands a case to the bankruptcy court, 'the appellate process likely will be much shorter if we decline jurisdiction and await ultimate review on all the combined issues.' " *Lakeshore*, 81 F.3d at 106, quoting *Stanton*, 766 F.2d at 1287-88. The case before us does not involve a situation where "all that remains to do on remand is a purely mechanical or computational task such that the proceedings on remand are highly unlikely to generate a new appeal or to affect the issue that the disappointed party wants to raise on appeal." *In re Saxman*, 325 F.3d at 1172 (internal quotation marks, citations and punctuation omitted). Rather, if we were to hear this appeal and affirm the BAP's holdings, the case would likely be remanded for further fact-finding, and it is

likely that the disappointed party would appeal again, first to the BAP or the district court, and then to this court. If we were to agree with Congrejo that the trustee's complaint is untimely and not entitled to equitable tolling, the litigation would indeed end; this, however, is essentially always true of statute of limitations defenses. If we were to assert jurisdiction over this case because acceptance of one party's statute of limitations defense might end the litigation, we would create an asymmetric rule permitting appellate jurisdiction whenever a BAP rejected a statute of limitations defense. We certainly do not need one more patch on the patchwork of our flexible standard. *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)* is distinguishable because there, the question on appeal regarding equitable tolling was purely legal. 14 F.3d 1380, 1384 (9th Cir. 1994) (considering "whether equitable tolling applies to the Bankruptcy Code and, if it does, whether . . . the trustee can invoke the doctrine on the *undisputed* facts of the case" (emphasis added)). Here, the facts relevant to the equitable tolling determination were contested in the bankruptcy court and were the subject of a full evidentiary hearing.

**[6]** The second consideration under *Vylene*, that of judicial efficiency, also militates against the exercise of appellate jurisdiction here. As discussed above, an appeal now would not necessarily avoid an appeal later. In addition, a closely related issue is pending in the underlying bankruptcy case. The holder of the mortgage on Bender's original parcel of Hawaiian property (which included Lot A-3) has filed a creditor's proof of claim based on that mortgage. The bankruptcy court has consolidated the remand of this appeal with proceedings related to the proof of claim and intends to resolve the remaining issues together, and to issue one judgment on those matters. Appellate jurisdiction will delay the bankruptcy court's effort to adjudicate efficiently all issues related to this property.

**[7]** The third *Vylene* consideration, preserving the bankruptcy court's role as finder of fact, weighs against jurisdic-

tion. Dismissing this appeal will preserve the bankruptcy court's role as the finder of fact by allowing it to determine the nature of the Trust before we review the related legal question of whether Lot A-3 is properly considered part of the bankruptcy estate.

**[8]** The fourth *Vylene* consideration also weighs against appellate jurisdiction, as neither party has argued that immediate appellate review would prevent irreparable harm.

With all four *Vylene* considerations pointing to a denial of jurisdiction for this appeal, our course is clear.

**[9]** Because we lack jurisdiction to hear this appeal, we do not reach the remaining issues raised by the parties. We therefore dismiss the appeal and cross-appeal and remand the case to the bankruptcy court for further proceedings.

**APPEAL DISMISSED.**