FILED

JUN 11 2025

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re: | BAP No. SC-25-1020-FLC |
| PAMELA LACHER, | |
| Debtor. | Bk. No. 24-03882-CL7 |
| | |
| PAMELA LACHER, | |
| Appellant, | |
| v. | **OPINION** |
| STATE BAR OF CALIFORNIA, | |
| Appellee. | |

Appeal from the United States Bankruptcy Court
for the Southern District of California
Christopher B. Latham, Chief Bankruptcy Judge, Presiding

APPEARANCES

Appellant Pamela Lacher argued pro se; Suzanne C. Grandt argued for appellee.

Before: FARIS, LAFFERTY, and CORBIT, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

Attorney Pamela Lacher has spent over twenty years fighting to avoid collection of a $3,000 debt. Due to her intransigence and abuse of the

legal system, her debt has ballooned to over $200,000, and she was subject to attorney disciplinary proceedings and possible disbarment. Ms. Lacher filed a chapter 7[1] petition and argued that she could not be disbarred because the underlying dispute arose from a dischargeable debt.

The bankruptcy court properly determined that the discharge injunction did not bar the disciplinary proceedings and that those proceedings were not discriminatory under § 525(a). We discern no error and AFFIRM.

We publish to explain why neither the Eleventh Amendment nor the *Younger* abstention doctrine precludes a bankruptcy court from enforcing the discharge and antidiscrimination provisions against a state and to clarify that this Panel's decision in *Franceschi v. State Bar of California (In re Franceschi)*, 268 B.R. 219 (9th Cir. BAP 2001), *aff'd*, 43 F. App'x 87 (9th Cir. 2002), has been implicitly overruled by the United States Supreme Court and is no longer good law.

FACTS[2]

**A.    The ECI litigation**

Ms. Lacher has been licensed to practice law in California for over thirty years. In or around 2001, she retained on behalf of a client the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] The appellant and appellee filed requests for judicial notice during the briefing process. BAP dkt. 30, 24-2. We GRANT both requests.

services of East County Investigations ("ECI"), which is owned by Jon and Sue Lane. ECI billed Ms. Lacher $3,830.85 for investigative work.

Ms. Lacher refused to pay ECI. ECI sued her in the state superior court and recovered a judgment of $2,793.85 plus attorneys' fees, costs, and interest.

In June 2002, Ms. Lacher and her mother filed a complaint in superior court against ECI and the Lanes (collectively, "the ECI Parties") for misrepresentation, intentional infliction of emotional distress, and breach of contract. The superior court dismissed the case and granted the ECI Parties' anti-SLAPP motion. The superior court awarded the ECI Parties attorneys' fees and costs totaling $7,687.90.

Ms. Lacher filed two unsuccessful appeals of those decisions to the California Court of Appeal. The appellate court imposed an additional $7,166 in sanctions for filing a frivolous appeal and awarded the ECI Parties fees and costs, which the superior court determined on remand were $5,800.

Ms. Lacher was undeterred. She filed a notice of lis pendens against the ECI Parties on behalf of her mother as a third-party claimant. After further litigation, in August 2005, the superior court awarded the ECI Parties fees incurred in expunging the lis pendens ($1,016.30) and attorneys' fees ($14,036.60).

By July 2011, Ms. Lacher's debt to the ECI Parties had increased to $54,645.27. In December 2014, the superior court entered an order requiring

3

Ms. Lacher to assign a portion of fees received from clients to the ECI Parties.

The ECI Parties commenced discovery in an effort to collect on the judgment. Ms. Lacher incurred over $5,000 in sanctions for failure to turn over requested documents. She refused to comply with a court order directing her to cooperate in discovery and instead filed another appeal. The Court of Appeal issued a decision in May 2018 in which it stated that "[t]he Lachers have continued to frustrate and evade the judgment collection process after filing a baseless lawsuit, which itself appeared to have been merely a ploy to harass the [ECI Parties]. The current record indicates that the Lachers have continued to engage in sanctionable conduct . . . ." The Court of Appeal noted its "strong disapproval of what we perceive to be Pamela Lacher's unprofessional conduct and abuse of the judicial process."

In September 2018, the superior court determined that appellate attorneys' fees totaled $15,680. It also issued a restraining order requiring Ms. Lacher to pay over $75,000 pursuant to the assignment order; Ms. Lacher did not comply. In July 2020, the superior court found Ms. Lacher in contempt of court based on her violation of multiple orders. It found beyond a reasonable doubt that Ms. Lacher was guilty of contempt for "disobedience of a lawful order of the court" and ordered her to pay a fine of $5,000 and attorneys' fees of $11,145.

When the ECI Parties renewed the judgment in April 2021, the total

judgment amount was $153,670.80, with interest continuing to accrue. The Lanes represented that, on the date of Ms. Lacher's bankruptcy petition, the judgment had increased to $220,815 (the "ECI Judgment").

## B.    Disciplinary proceedings

Ms. Lacher was no stranger to appellee State Bar of California (the "State Bar"). In 2009, the State Bar commenced disciplinary proceedings against her for failure to report two instances of judicial sanctions in the ECI litigation. The California Supreme Court imposed a stayed one-year suspension and placed her on probation for two years.

In 2023, the State Bar found Ms. Lacher culpable of four counts of misconduct stemming from disciplinary charges in an unrelated matter. The California Supreme Court suspended her from the practice of law for ninety days and placed her on probation for one year.

In the meantime, on June 3, 2022, the State Bar initiated the disciplinary proceedings at issue in this appeal, claiming that her conduct in the ECI litigation violated her ethical obligations. After a two-day trial, the State Bar Court found that Ms. Lacher:

- Violated eight court orders (count 1);
- Failed to maintain the respect due courts when she disregarded court orders (count 2) and failed to pay sanctions on appeal (count 3);
- Maintained an unjust action (count 4) with a corrupt motive (count 5) when she pursued the meritless appeal in 2003 to delay payment of the ECI Judgment;

5

- Maintained an unjust action (count 6) with a corrupt motive (count 7) when she prosecuted a meritless appeal for the purposes of delay;

- Failed to report judicial sanctions to the State Bar (count 8); and

- Commingled funds in her client trust account when she issued four checks to her mother from that account for the payment of personal or business expenses (count 9).

The State Bar Court found aggravating factors, including her prior record of discipline, multiple acts of wrongdoing, pattern of misconduct, and significant harm. It held that the aggravating factors were entitled to substantial weight and outweighed the mitigating factors. It found that her conduct did not warrant disbarment but recommended a nine-month actual suspension (or until she paid the ECI Judgment). It stated that Ms. Lacher "has relentlessly pursued a baseless lawsuit and sought appellate redress by filing frivolous appeals—actions culminating in a judgment of contempt against her." It said that she "abused the judicial process and harmed [ECI] in her crusade to thwart [ECI's] collection efforts. Respondent's actions are particularly troubling when the numerous sanctions imposed against her failed to alter her behavior." The State Bar Court concluded that her "failure to comply with eight court orders is a serious ethical violation." It did not recommend monetary sanctions.

On June 16, 2024, the Review Department of the State Bar issued an opinion. It dismissed portions of counts 1 and 2 and the entirety of counts 3, 4, and 5 as duplicative of earlier disciplinary proceedings. However, it

6

affirmed the State Bar Court's determinations that Ms. Lacher failed to comply with court orders, filed a frivolous appeal, abused the judicial process, failed to report judicial sanctions, and commingled client trust funds. It also upheld the State Bar Court's findings of aggravating factors.

Ultimately, the Review Department held that "Lacher's pattern of misconduct merits a more serious discipline" than that imposed by the hearing judge and recommended that Ms. Lacher be disbarred:

> Lacher's lack of remorse and argument that she is not culpable for violating any court order is troubling. She has fought against ECI relentlessly for 18 years and the courts have repeatedly told her she is wrong, yet she refuses to listen. In addition, courts have found that she has pursued her causes only to harass or delay payment of what she owes. She has shown an unwillingness to conform to ethical responsibilities. The mitigating circumstances pale in comparison to the aggravation and the harm that Lacher has caused. Public protection requires that Lacher be disbarred.

The Review Department did not require the payment of the ECI Judgment; rather, it recommended Ms. Lacher's disbarment regardless of whether she satisfied the judgment. Her license was immediately transferred to involuntary inactive status.

The State Bar transmitted its recommendation to the California Supreme Court.

## C.    Ms. Lacher's bankruptcy proceedings

On October 17, 2024, Ms. Lacher filed a chapter 7 bankruptcy petition. She scheduled a contingent, unliquidated, and disputed

7

unsecured debt owed to Mr. Lane in the amount of $161,243.33.[3]

The California Supreme Court initially stayed the disciplinary proceedings but later lifted the stay after determining that the automatic stay was not applicable to attorney disciplinary proceedings. Ms. Lacher filed a petition for review of the State Bar's disbarment recommendation. That case remains pending.

### 1. Ms. Lacher's emergency motion

Meanwhile, Ms. Lacher filed an emergency motion requesting that the bankruptcy court determine that the automatic stay applied to the disciplinary proceedings. She argued that the automatic stay precluded disciplinary proceedings and that those proceedings were discriminatory under § 525(a) because the suspension and pending disbarment were due to her failure to pay a dischargeable prepetition debt. She urged the bankruptcy court to order the State Bar to immediately reinstate her license.

The State Bar opposed the emergency motion. It argued that the disciplinary proceedings were exempted from the automatic stay under § 362(b)(4), that the suspension did not violate § 525, that *Younger* abstention barred her requested relief, and that the State Bar enjoyed sovereign immunity under the Eleventh Amendment.

---

[3] On December 16, 2024, the Lanes filed an adversary complaint against Ms. Lacher seeking to have the ECI Judgment declared nondischargeable under § 523(a)(6). That case remains pending.

On November 27, 2024, the bankruptcy court entered an order on the emergency motion (the "Order Construing Automatic Stay"). It ruled that the automatic stay did not apply to state bar disciplinary proceedings and rejected Ms. Lacher's position that the suspension and proposed disbarment violated § 525(a). It held that the adverse action was not due "solely" to Ms. Lacher's failure to pay either the ECI Judgment or the attorney discipline costs. The bankruptcy court did not address the State Bar's arguments concerning sovereign immunity or abstention.

Ms. Lacher filed a request for rehearing and clarification of the Order Construing Automatic Stay. She claimed that the bankruptcy court failed to appropriately analyze § 525 and that each count of the disciplinary complaint related back to the ECI Judgment debt. She argued that the appropriate inquiry was whether the judgment debt "triggered" the disciplinary process. The court did not immediately rule on this motion.

**2.      Ms. Lacher's supplemental request for a hearing**

On January 23, 2025, Ms. Lacher received her discharge under § 727. Four days later, she filed a supplemental request for an emergency hearing. She argued that the State Bar's disbarment recommendation was based solely on the ECI Judgment and the violation of collection orders. She requested that the bankruptcy court find that the State Bar's actions were discriminatory and violated § 525 and that the discharge injunction bars any further disciplinary actions.

On February 3, 2025, the bankruptcy court entered an order on

Ms. Lacher's supplemental request (the "Order Construing Discharge"). It held that the State Bar's recommendation was not a judgment under § 524 that was subject to the discharge injunction. Even if it were a judgment, "it still does not implicate § 524 – the recommendation does not purport to be a 'determination of the personal liability of [Debtor] with respect to any debt discharged under section 727.'" Furthermore, it ruled that the disciplinary proceeding did not offend the discharge injunction because "[t]he State Bar does not seek to 'collect, recover or offset any [discharged] debt as a personal liability of [Debtor].' Instead, the disciplinary action treats her possible disbarment on several grounds *independent* of her debt to ECI."

The bankruptcy court declined to rule on whether the discharge might affect the disciplinary proceedings and noted in a footnote that "the Review Department's recommendation may have some outdated facts now that ECI's debt is discharged.[4] But the effect of that on license determinations is for the California Supreme Court to decide." The court concluded that the discharge injunction did not prevent the disciplinary proceedings or any judgment that did not concern her liability on discharged debts. It clarified that the discharge injunction "neither voids any portion of the State Bar's recommendation, nor stays the disciplinary proceedings now before the California Supreme Court."

---

[4] This statement was incorrect, because ECI's adversary proceeding challenging the dischargeability of its debt was (and still is) pending.

Ms. Lacher timely appealed the Order Construing Discharge.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

(1) Whether the Eleventh Amendment grants the State Bar sovereign immunity from Ms. Lacher's motions.

(2) Whether *Younger* abstention precluded the bankruptcy court from ruling on Ms. Lacher's motions.

(3) Whether the bankruptcy court failed to rule on Ms. Lacher's requested relief.

(4) Whether the bankruptcy court erred in ruling that the discharge injunction did not preclude the disciplinary proceedings.

(5) Whether the bankruptcy court erred in ruling that the disciplinary proceedings were not discriminatory and did not violate § 525(a).

## STANDARD OF REVIEW

We review de novo issues of Eleventh Amendment sovereign immunity, *see Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019), and *Younger* abstention, *see Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003).

"The scope of the bankruptcy discharge injunction is a mixed question of law and fact to be reviewed either de novo or for clear error, depending upon whether questions of law or questions of fact

11

predominate." *Reed v. Nielsen (In re Reed)*, 640 B.R. 932, 938 (9th Cir. BAP 2022) (citation omitted), *aff'd in part, appeal dismissed in part*, No. 22-60021, 2023 WL 1879516 (9th Cir. Feb. 10, 2023). In this case, the facts are uncontroverted and questions of law predominate, so our review is de novo.

Similarly, we review de novo the bankruptcy court's interpretation of the Bankruptcy Code. *Misson Hen LLC v. Lee (In re Lee)*, 655 B.R. 340, 346 (9th Cir. BAP 2023), *aff'd*, --- F.4th ----, 2025 WL 1463294 (9th Cir. May 22, 2025).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

### A.   We reject the State Bar's arguments concerning sovereign immunity and abstention.

Before reaching the merits of the appeal, we address the State Bar's contentions that its sovereign immunity and *Younger* abstention preclude Ms. Lacher's requested relief. We disagree on both counts.

#### 1.   Eleventh Amendment sovereign immunity does not apply to the bankruptcy proceedings.

The State Bar argues that it is entitled to sovereign immunity under the Eleventh Amendment and is not subject to the bankruptcy court's jurisdiction. It contends that, under *Central Virginia Community College v.*

12

*Katz*, 546 U.S. 356, 377 (2006), states retain their sovereign immunity for any action not invoking the bankruptcy court's in rem jurisdiction. It also points to the Ninth Circuit's decision in *Montana Department of Revenue v. Blixseth (In re Blixseth)*, 112 F.4th 837 (9th Cir. 2024), as an instance of the state properly invoking sovereign immunity where the underlying action did not concern property of the bankruptcy estate.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has held that the Eleventh Amendment protects the states' sovereign immunity from suit in federal court but that such immunity is limited. "Basic tenets of sovereign immunity teach that courts may not ordinarily hear a suit brought by any person against a nonconsenting State. But States still remain subject to suit in certain circumstances. . . . Congress may also enact laws abrogating their immunity under the Fourteenth Amendment." *Torres v. Tex. Dep't of Pub. Safety*, 597 U.S. 580, 587 (2022) (cleaned up).

There is no dispute that the State Bar is an "arm[ ] of the state and enjoy[s] sovereign immunity under the Eleventh Amendment." *Kohn v. State Bar of Cal.*, 87 F.4th 1021, 1037 (9th Cir. 2023) (en banc), *cert. denied*, 144

S. Ct. 1465 (2024).[5]

However, we disagree with the State Bar's position that the disciplinary proceedings fall outside of the bankruptcy court's in rem jurisdiction such that the State Bar retained sovereign immunity over that matter. In *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446-47 (2004), which the State Bar failed to cite, the Supreme Court noted that "the States' sovereign immunity did not prohibit *in rem* admiralty actions in which the State did not possess the res[.]" Two years later, the Court followed up on its holding in *Hood* and proclaimed that "[b]ankruptcy jurisdiction, at its core, is *in rem*." *Katz*, 546 U.S. at 362. "In bankruptcy, the court's jurisdiction is premised on the debtor and his estate, and not on the creditors. As such, its exercise does not, in the usual case, interfere with state sovereignty even when States' interests are affected." *Id.* at 370 (cleaned up).

The State Bar argues that its disciplinary case against Ms. Lacher was not an in rem proceeding, because it was not "engaging in any collection action that could impact Lacher's property."[6]

---

[5] Ms. Lacher argues that the State Bar waived its sovereign immunity when it consented to the bankruptcy court's jurisdiction by opposing her emergency motion. "A state's consent to suit, however, must be unequivocally expressed." *In re Blixseth*, 112 F.4th at 844 (cleaned up). The State Bar made no such unequivocal declaration.

[6] The State Bar may have conceded this contention at oral argument, but we address the issue regardless because the colloquy between the Panel and the State Bar's counsel was not perfectly clear.

The State Bar's argument simply ignores the Court's decisions in *Katz* and *Hood*. Bankruptcy court jurisdiction is not limited to pecuniary matters; the Supreme Court has explained that proceedings regarding the discharge injunction are central to bankruptcy proceedings. *See Katz*, 546 U.S. at 363-64 ("Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."). "A debtor does not seek monetary damages or any affirmative relief from a State by seeking to discharge a debt; nor does he subject an unwilling State to a coercive judicial process. He seeks only a discharge of his debts." *Hood*, 541 U.S. at 450.

Under this framework, the Court has held that bankruptcy proceedings generally do not infringe on state sovereignty. In *Hood*, the Court held that proceedings to discharge a student loan debt were not barred by sovereign immunity. 541 U.S. at 450. In *Katz*, the Court applied the same reasoning to a trustee's adversary proceeding against a state to set aside preferential transfers. 546 U.S. at 359. Similarly, Ms. Lacher's efforts to use the discharge injunction to stop her disbarment is within the bankruptcy court's in rem jurisdiction and not subject to sovereign immunity. *See, e.g.*, *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1083 (9th Cir. 2000) (en banc) (stating that, even where there is concurrent jurisdiction, state court proceedings "would have to defer to the

plenary power vested in the federal courts over bankruptcy proceedings").

The Supreme Court has not considered whether the antidiscrimination provisions of § 525(a) infringe on a state's sovereign immunity. But the Court's reasoning in *Hood* and *Katz* means that those requirements are enforceable against a state. Congress has decided that, in order to give honest but unfortunate debtors a true "fresh start," it is not enough to free them from most of their debts. In addition, Congress has allowed debtors to retain certain property free of the old creditors' claims, *see* § 522(b), (c), and has protected them from certain kinds of discriminatory treatment that could impair their earning potential, *see* § 525. Section 525 makes the discharge more meaningful. *See Wike v. State Bar of Nev. (In re Wike)*, 660 B.R. 683, 690 (9th Cir. BAP 2024) ("Congress, recognizing the immense impact governmental organizations that perform licensing functions can have on a debtor's livelihood, enacted § 525(a) to protect the fresh start promised to debtors who receive a discharge."). Because the discharge does not offend a state's sovereign immunity and § 525 is in substance a reinforcement of the discharge, the antidiscrimination provisions of § 525 are enforceable against a state in federal court.

In addition, the Court has concluded, in the context of an automatic stay violation asserted against an Indian tribe, that "the Bankruptcy Code unequivocally abrogates the sovereign immunity of any and every government that possesses the power to assert such immunity." *Lac du*

16

*Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 388 (2023). For purposes of the Eleventh Amendment, there is no meaningful distinction between an action against a state to enforce the automatic stay and an action to enforce the discharge or the antidiscrimination provision.

The State Bar's reliance on *Blixseth* is unavailing. The Ninth Circuit in *Blixseth* distinguished *Hood* and *Katz* and held that the state properly invoked sovereign immunity in defense of a debtor's adversary proceeding against the state for money damages and fees due to its filing of an involuntary petition against him. It held that "the adversary proceeding brought by Blixseth under § 303(i) was not necessary to effectuate the jurisdiction of the bankruptcy court in this case." *In re Blixseth*, 112 F.4th at 847 (cleaned up). It noted that § 303(i) was a remedial statute, not a "core aspect of the administration of bankrupt estates[,]" *id.* (quoting *Katz*, 546 U.S. at 372), and "does not concern property in the *res* of the bankruptcy estate, but rather compensation for having been the subject of an unsuccessful involuntary petition that could have created a *res* but never did[,]" *id.* It specifically held that adversary proceedings "under § 303(i) [do not] further . . . 'the ultimate discharge that gives the debtor a fresh start by releasing him . . . from further liability for old debts.' Blixseth does not seek a 'fresh start' with regard to 'old debts,' but reimbursement of his costs incurred for undergoing bankruptcy proceedings." *Id.* at 847-48 (citation omitted). Here, Ms. Lacher's arguments implicate the fresh start

afforded by the discharge injunction, which is central to the bankruptcy court's jurisdiction. The State Bar is not entitled to sovereign immunity.

The State Bar cites our 2001 decision in *Franceschi* for the proposition that the state enjoys sovereign immunity with regard to a debtor's challenge in bankruptcy court to attorney disciplinary proceedings. But *Franceschi* predates and is contrary to both *Hood* and *Katz* and thus is no longer good law. The *Franceschi* Panel rejected the debtor's argument "that the bankruptcy court's jurisdiction over dischargeability, confirmation, and claims resolution derives not from its jurisdiction over creditors, but from its jurisdiction over debtors and their estates . . . ." 268 B.R. at 223. But in *Hood*, the Supreme Court made precisely the opposite holding: "The bankruptcy court's jurisdiction is premised on the res, not on the persona[.]" *Hood*, 541 U.S. at 441. Thus, the Supreme Court has implicitly overruled *Franceschi*, and we must not follow it. *See Congrejo Invs., LLC v. Mann (In re Bender)*, 586 F.3d 1159, 1164 (9th Cir. 2009) ("Circuit precedent may be overturned without an en banc rehearing if the Supreme Court has 'undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable.'" (citation omitted)); *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc) (holding that a district court did not err in declining to follow Ninth Circuit precedent that had been implicitly overturned and "that the issues decided by the higher court need not be identical in order to be controlling").

18

**2.** **The bankruptcy court did not need to abstain from ruling on Ms. Lacher's motions.**

The State Bar also argues that Ms. Lacher's requested relief – the reinstatement of her law license – would run afoul of the *Younger* abstention doctrine. We again disagree.[7]

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court decided that, with rare exceptions, federal courts cannot enjoin criminal proceedings in state courts. The Court's decision rested in part on a long history of Congressional enactments, dating back to 1793, that barred federal injunctions interfering with state court proceedings, with only three statutory exceptions: "(1) 'except as expressly authorized by Act of Congress'; (2) 'where necessary in aid of its jurisdiction'; and (3) 'to protect or effectuate its judgments.'" *Id.* at 43. The Court also noted that there was a judge-made exception "where a person about to be prosecuted in a state court can show that he will, if the proceeding in the state court is not enjoined, suffer irreparable damages." *Id.*

The Court held that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it, and that appellee Harris has failed to make any showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Id.* at 54. The Court declined to reach the question

_____

[7] As with the sovereign immunity discussion, the State Bar may have conceded this point at oral argument.

whether "28 U.S.C. § 2283, which prohibits an injunction against state court proceedings 'except as expressly authorized by Act of Congress' would in and of itself be controlling under the circumstances of this case." *Id.*

Courts have extended the *Younger* abstention doctrine beyond the criminal prosecution context, to quasi-criminal and even civil proceedings. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987) (holding that "*Younger* abstention [is applicable] not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government"). Thus, in a decision that the State Bar inexplicably fails to cite, the Court held that *Younger* abstention bars federal court injunctions against state bar disciplinary proceedings. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982); *see also Hirsh v. Justs. of Sup. Ct. of State of Cal.*, 67 F.3d 708, 712 (9th Cir. 1995) (same).

But the *Younger* doctrine has limits. The Court has held that the *Younger* abstention doctrine does not curtail the bankruptcy discharge. In *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552 (1990), the Court interpreted the Bankruptcy Code to provide that the debtor in a chapter 13 case may obtain a discharge of criminal restitution obligations and held that *Younger* was not to the contrary:

> Nor do we conclude lightly that Congress intended to interfere with States' administration of their criminal justice systems

20

[citing *Younger*]. [P]ermitting discharge of criminal restitution obligations may hamper the flexibility of state criminal judges in fashioning appropriate sentences and require state prosecutors to participate in federal bankruptcy proceedings to safeguard state interests. Certainly the legitimate state interest in avoiding such intrusions is not lessened simply because the offender files under Chapter 13 rather than Chapter 7. Nonetheless, the concerns animating *Younger* cannot justify rewriting the Code to avoid federal intrusion. Where, as here, congressional intent is clear, our sole function is to enforce the statute according to its terms.

495 U.S. at 564 (cleaned up).[8]

We conclude that the *Younger* abstention doctrine does not apply when a debtor in bankruptcy seeks to enforce the discharge, or the antidiscrimination provisions of § 525(a), against a state in federal court. As the Court noted in *Younger* itself, the doctrine does not apply to actions that Congress has expressly authorized, or where the injunction is necessary for the federal court to carry out its jurisdiction or enforce its own judgments. These exceptions apply to the discharge and the antidiscrimination

---

[8] In response to the Supreme Court's ruling in *Davenport*, Congress quickly enacted the Criminal Victims Protection Act of 1990, P.L. 101-581, § 3, 104 Stat. 2865 (1990), *codified at* § 1328(a)(3), which effectively overturned *Davenport*'s interpretation of the chapter 13 discharge. As a result, restitution orders are nondischargeable in both chapter 7 and chapter 13. *FDIC v. Soderling (In re Soderling)*, 998 F.2d 730, 733 n.4 (9th Cir. 1993). However, the Court subsequently construed Congress' action as limited to an explicit "withdraw[al of] the Bankruptcy Court's power to discharge restitution orders under 11 U.S.C. § 1328(a)." *Johnson v. Home State Bank*, 501 U.S. 78, 83 n.4 (1991). Thus, Congress changed only the substantive law regarding discharge under § 1328(a); it could have addressed the jurisdictional aspect of *Davenport*, but did not do so.

provisions. Congress has expressly made those provisions enforceable against "governmental units," §§ 524, 525(a), 106(a), including the states and their instrumentalities, § 101(27). Such actions are necessary to allow the bankruptcy court to carry out its jurisdiction to grant the debtor a fresh start and to enforce the discharge order.

As the Supreme Court recognized ninety years ago, "[o]ne of the primary purposes of the Bankruptcy Act is to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Loc. Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (cleaned up). Bankruptcy courts simply cannot provide a fresh start without interfering to some degree with state court proceedings.[9]

## B. The bankruptcy court did not fail to address Ms. Lacher's arguments concerning the discharge injunction.

Ms. Lacher contends that the bankruptcy court failed to rule on her motions, leaving her "in limbo." We disagree.

Ms. Lacher argues that she "twice asked the bankruptcy court for determination, clarification; to enjoin such actions and proceedings, and to

---

[9] In *Franceschi*, we affirmed the dismissal of the debtor's action based both on the Eleventh Amendment and *Younger* abstention. Although the Supreme Court decided *Davenport* before we decided *Franceschi*, we did not cite *Davenport* in our decision. Because the Supreme Court's Eleventh Amendment jurisprudence and the *Younger* doctrine are animated by the same concerns about respect for state sovereignty, and because the Supreme Court has significantly narrowed the effect of the Eleventh Amendment in bankruptcy proceedings affecting the states, *Franceschi*'s application of the *Younger* doctrine is no longer good law.

order her license reactivated. . . . Instead, the bankruptcy court made some improper findings and forwarded the scope of discharge decision to the California Supreme Court . . . ." She claims that the court ignored a core bankruptcy issue and "failed to render aid, . . . interfering with her fresh start."

Ms. Lacher mischaracterizes the bankruptcy court's rulings, in which it disagreed with her positions and refused to grant her the relief requested. In the Order Construing Automatic Stay, the bankruptcy court directly addressed the automatic stay and § 525 arguments. In the Order Construing Discharge, it explicitly held that "the injunction does not void the State Bar's recommendation, as it is not a judgment for § 524's purposes. . . . Further, the discharge has no injunctive effect on the California Supreme Court's disciplinary proceeding." The bankruptcy court did not fail to consider arguments or to rule on her motions; it clearly held that the discharge injunction (and the prior automatic stay[10]) did not preclude the disciplinary proceedings and that those proceedings were not discriminatory under § 525. In other words, the court answered the questions before it. Ms. Lacher does not like those decisions, but the court was not derelict in its duties.

Ms. Lacher incorrectly asserts that the bankruptcy court allowed the

---

[10] Ms. Lacher references the Order Construing Automatic Stay in her opening brief but does not specifically and distinctly assign any error to the bankruptcy court's ruling on the automatic stay. Thus, we do not address this argument.

California Supreme Court to determine the scope of the discharge injunction. The bankruptcy court merely stated in a footnote that the California Supreme Court could consider what effect, if any, the recent discharge of the underlying debt might have on its determination whether to disbar Ms. Lacher. It did not leave for the California Supreme Court the determination whether the debt was discharged or whether the discharge barred the proceedings under § 525.

**C.    The bankruptcy court did not err in determining that the discharge injunction did not preclude the disciplinary proceedings.**

Ms. Lacher challenges the bankruptcy court's ruling that the discharge injunction does not preclude the disciplinary proceedings. We find no error.

Ms. Lacher argues that the continuation of the disciplinary proceedings violates the discharge injunction. She reasons that the underlying ECI Judgment is a nullity, and "[b]eing worthless in itself, all proceedings founded upon it are equally worthless." Thus, because the disciplinary charges arose from "debt and debt collection[,]" those charges are also a nullity.[11]

This argument is frivolous.

Under § 524, the bankruptcy discharge has two effects:

---

[11] At oral argument, Ms. Lacher doubled down on her position, claiming that the discharge injunction "voids the underlying judgment and it voids every order that arises from, is based on, and is related to my personal liability for that discharged debt . . . ."

24

(a) A discharge in a case under this title –

> (1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . whether or not discharge of such debt is waived;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived . . . .

§ 524(a). Neither of these effects helps Ms. Lacher.

Ms. Lacher thinks that the voiding of the ECI Judgment pursuant to § 524(a)(1) vitiates the entire disciplinary proceeding. She is wrong for three reasons.

First, ECI has filed a complaint seeking a determination that the ECI Judgment is not dischargeable, and the bankruptcy court has not yet decided that issue. Thus, it is not a foregone conclusion that the ECI Judgment will be discharged.

Second, even if ECI's claim is discharged, the ECI Judgment will be void only to the extent it determines Ms. Lacher's personal liability to ECI. The discharge does not affect any other consequences of a discharged debt. We have cautioned that "the discharge injunction only enjoins personal collection of a discharged debt and does not relieve a discharged debtor from all forms of imposition or inconvenience." *RS Air, LLC v. NetJets*

25

*Aviation, Inc. (In re RS Air, LLC)*, 651 B.R. 538, 544 (9th Cir. BAP 2023). The disbarment recommendation was not a "determination of the personal liability of [Ms. Lacher] with respect to" the ECI Judgment. § 524(a)(1).

Third, the voiding of the ECI Judgment would not affect or discharge Ms. Lacher's nonmonetary responsibility for the many wrongful acts she undertook in an effort to avoid paying that judgment. Even if the ECI Judgment is discharged in bankruptcy, it was valid when it was entered, and Ms. Lacher must bear the consequences for her frivolous lawsuits, meritless appeals, and contumacious conduct after it was entered.

To hold otherwise would lead to an absurd result. Imagine that a debtor tried to dissuade a judgment creditor from collecting the judgment by beating the creditor with a baseball bat and later obtained a discharge of the judgment debt in bankruptcy. Under Ms. Lacher's reasoning, the discharge would insulate our hypothetical debtor from any liability, not only for the judgment, but also for the assault, because the assault was "related to" the discharged judgment debt; put another way, it was the judgment creditor's attempts to collect the debt that led the debtor to attack him, so the argument runs that the discharge absolves the debtor from any liability for the attack. This is not the law. The discharge does not give Ms. Lacher a free pass for every bad act she committed that is tangentially related to the underlying judgment. The (possible) discharge of Ms. Lacher's personal liability on the ECI Judgment does not shield her from the consequences of her misconduct in response to that judgment.

26

Ms. Lacher also thinks that the discharge injunction under § 524(a)(2) bars the disciplinary proceedings. Again, she is wrong. As the bankruptcy court correctly held, the State Bar was not seeking to "collect, recover or offset [the ECI Judgment] as a personal liability of" Ms. Lacher. *See* § 524(a)(2). Indeed, the Review Department recommended her disbarment whether or not she paid the ECI Judgment.

In a similar factual situation, we have explained that "the State Bar's participation in the disciplinary proceedings was not a continuation of an action to recover a discharged debt as a personal liability of the Debtor—it was an action to discipline an attorney for conduct deemed harmful to the public." *Scheer v. State Bar of Cal. (In re Scheer)*, BAP No. CC-23-1159-GCF, 2024 WL 1235394, at *5 (9th Cir. BAP Mar. 22, 2024) (citations omitted). We concluded that the state bar disciplinary proceedings did not violate §§ 524 or 525. Similarly, the State Bar proceedings here concerned Ms. Lacher's fitness to practice law, not the collection of a debt.

Thus, even if Ms. Lacher's personal liability under the ECI Judgment is eventually discharged, the findings of ethical violations and abuse of the legal process underlying the disbarment recommendation would remain intact. The bankruptcy court did not err in ruling that the discharge injunction did not bar the disciplinary proceedings.

**D.    The bankruptcy court did not err in determining that the disciplinary proceedings did not violate § 525(a).**

Finally, Ms. Lacher argues that the disciplinary proceedings violated

§ 525(a) because they discriminated against her based on her status as a debtor. She claims that the State Bar recommended disbarment because she failed to pay a dischargeable debt. She is wrong.

Section 525(a) provides that

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license . . . to . . . or discriminate with respect to employment against, a person that is or has been a debtor under this title . . . , . . . solely because such bankrupt or debtor is or has been a debtor under this title . . . , has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title . . . .

§ 525(a). This section is "a tool to enforce the discharge injunction and prevent reaffirmations of discharged debt[.]" *In re Wike*, 660 B.R. at 695.

In addressing whether section 325(a) prohibits a governmental action, the Supreme Court has explained that "[s]ection 525 means nothing more or less than that the failure to pay a dischargeable debt must alone be the proximate cause of the cancellation – the act or event that triggers the agency's decision to cancel, whatever the agency's ultimate motive in pulling the trigger may be." *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 301-02 (2003); *see also Spaulding v. Citizens Fed. Sav. & Loan Ass'n of Dayton (In re Spaulding)*, 116 B.R. 567, 572-73 (Bankr. S.D. Ohio 1990) ("To establish a cause of action under section 525(a) the plaintiff must demonstrate discrimination against a debtor solely because the debtor

sought relief under Title 11. Where the alleged discriminatory act reflects a policy determination of the defendant that is applied consistently to all parties, whether or not those parties sought Title 11 relief, it is not actionable under section 525(a)." (citation omitted)).

> We have recently stated that this analysis involves two distinct steps:
>
> [F]irst, we must assess whether the disciplinary costs are dischargeable, or if the costs were excepted from Debtor's discharge under § 523(a)(7). If the disciplinary costs were excepted from discharge, as the bankruptcy court held, our review ends there. However, if the disciplinary costs were discharged, we proceed to the next step: assessing whether the State Bar refused to fully reinstate Debtor "solely" because Debtor has not paid the outstanding disciplinary costs.

*In re Wike*, 660 B.R. at 690 (citation omitted).

As to the first prong, Ms. Lacher received her discharge earlier this year, and the Lanes' adversary proceeding to determine the dischargeability of the ECI Judgment is pending. Because the bankruptcy court has not determined whether the debt is excepted from discharge, we must proceed to the second prong: whether the disbarment recommendation is "solely" because Ms. Lacher has not paid the ECI Judgment.

The bankruptcy court correctly held that the disciplinary action is not "solely" due to Ms. Lacher's failure to pay a debt. While Ms. Lacher's refusal to satisfy the ECI Judgment was certainly at or near the starting point of her ethical violations, it was not the reason for the State Bar's

29

disbarment recommendation. The Review Department did not cite non-payment of the debt or Ms. Lacher's status as a debtor as a reason to discipline her. Rather, it was Ms. Lacher's willful violation of court orders, pattern of misconduct, abuse of the judicial process, and "unwillingness to conform to ethical responsibilities" that led to her suspension and pending disbarment. In other words, the "proximate" cause of the disciplinary action was Ms. Lacher's own poor choices while attempting to avoid payment of a judgment, not the unpaid debt or her bankruptcy filing.[12]

Ms. Lacher also claims that "solely" does not mean "only," because a regulatory body such as the State Bar will always be able to assert some type of regulatory or economic reason to pursue disciplinary proceedings. This argument is a red herring. She bases this argument on our holding in *Wike*, in which we rejected the bankruptcy court's determination that the state bar had not violated § 525(a) because the disciplinary costs were imposed "to promote an attorney's rehabilitation, deter misconduct, and protect the public." 660 B.R. at 706. Here, the State Bar did not seek to recover a debt. Moreover, the State Bar does not assert that the only other

_____

[12] Ms. Lacher clings to a single word in *NextWave* and contends that "the failure to pay the dischargeable debt was the 'trigger' to the disciplinary process of taking away her license." She suggests that voiding the "triggering" judgment must also void the results of the disciplinary proceedings. This argument is frivolous. The Court's use of the "trigger" metaphor does not change the plain meaning of § 525(a). The State Bar did not discipline Ms. Lacher "solely" because she failed to pay a dischargeable debt; rather, she was disciplined for her subsequent actions: the failure to comply with court orders, prosecution of a meritless appeal, failure to report sanctions, and commingling client trust funds.

reason for the pending disbarment is a generalized regulatory motive; rather, it is to discipline Ms. Lacher for her willful ethical violations. *Cf. id.* ("If there are other reasons preventing Debtor from full reinstatement – such as failure to comply with the [Supreme Court of Nevada's] mentorship and accounting requirements – denial of reinstatement would not be based 'solely' on payment of a discharged debt and, as a result, would not run afoul of § 525(a).").

In fact, Ms. Lacher's case presents the polar opposite to the facts in *NextWave* and *Wike*. Unlike those cases, here, the State Bar is not attempting to collect any debt – on behalf of itself or any other entity – and the revocation of Ms. Lacher's law license rests entirely on bases separate from Ms. Lacher's failure to pay a debt. In addition, unlike *NextWave* and *Wike*, the State Bar is not relying on a general regulatory motive; instead, the State Bar presented numerous specific instances of contempt that supported their decision to recommend Ms. Lacher's disbarment. Such disbarment is not conditioned on any further action by Ms. Lacher, let alone the payment of any debt. As a result, *NextWave* and *Wike* are inapposite.

The bankruptcy court did not err in finding that the State Bar did not violate § 525(a).[13]

---

[13] Ms. Lacher argues for the first time in her reply brief that California Business and Professions Code § 6007(c)(4) is unconstitutional because it violates the Supremacy Clause inasmuch as it is an attempt to induce collection of a discharged debt. We will not consider arguments that were not raised in the bankruptcy court or in the

## CONCLUSION

We disagree with the State Bar that the Eleventh Amendment and *Younger* abstention preclude this Panel or the bankruptcy court from ruling on the matters raised by Ms. Lacher. Nevertheless, we agree that the bankruptcy court correctly ruled that the disciplinary proceedings were not barred by the discharge injunction and did not violate § 525. We AFFIRM.

---

appellant's opening brief. *See Padgett v. Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009) (we do not consider arguments and allegations raised for the first time on appeal); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). Similarly, we do not consider her untimely and unauthorized supplemental filing and request for judicial notice that were filed after close of briefing. BAP dkt. 39. *See* Rule 8018(a)(3).